Sylvia F. MUELLER, Plaintiff-Appellant,

v.

HARRY KAUFMANN MOTORCARS, INC.,
Defendant-Respondent.†

Court of Appeals

*No. 2014AP351. Oral argument October 28, 2014.
—Decided December 23, 2014.*

2015 WI App 8

(Also reported in 859 N.W.2d 451.)

† Petition for Review filed.

597

600

601

602

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy J. Aiken, Vincent P. Megna* and *Susan M. Grzeskowiak* of *Aiken & Scoptur, S.C.*, Milwaukee. There was oral argument by *Vincent P. Megna*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry E. Johnson* of *Peterson, Johnson & Murray, S.C.*, Milwaukee. There was oral argument by *Terry E. Johnson*.

Before Curley P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J.   At the heart of this case are Sylvia F. Mueller's allegations that Harry Kaufmann Motorcars, Inc. misrepresented the condition of a 1995 Mercedes-Benz it sold to her, and that she is entitled to rescission of the purchase contract and/or a refund of the full purchase price of the vehicle, pursuant to Wis. Stat. §§ 100.18 and 218.0116(1)(f) (2011–12),[1] and common law intentional misrepresentation principles. The trial court rejected Mueller's rescission and/or refund argument and dismissed all her claims on Kaufmann's motion for directed verdict. The trial court concluded that Mueller's recovery on her § 100.18 claim was limited to benefit-of-the-bargain damages, namely cost of repair or diminution in value, and that she failed to present sufficient evidence to demonstrate that she was entitled to such damages. On her intentional misrepresentation claim, the trial court concluded that the evidence was insufficient to show that the misrepresen-

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version.

tations were material and that Mueller again failed to present sufficient damage evidence.

¶ 2.   On appeal, Mueller argues that the trial court erred when it concluded that:   (1) rescission and/or refund were not remedies available for statutory misrepresentation under WIS. STAT. § 100.18; (2) her evidence was insufficient to show that the misrepresentations were substantial enough to warrant imposition of the equitable remedy of rescission on the common law misrepresentation claim; (3) she failed to prove benefit-of-the-bargain damages on both claims; and (4) Mueller could not testify as to the car's value to her.[2]

¶ 3.   We conclude, for the reasons set forth below, that WIS. STAT. § 100.18 permits plaintiffs, in some instances, to recover a refund of the purchase price. However, the plain language of the statute, which permits recovery only for "pecuniary loss," does not permit rescission as a remedy. Plaintiffs can, however, receive rescission as a remedy for intentional misrepresentation when the misrepresentation is "material." We also conclude that the trial court erroneously exercised its discretion when it prohibited Mueller from testifying as to the value of the car to her. Because it is up to a jury

---

[2] In her brief to this court, Mueller also challenges a number of other evidentiary rulings, including the trial court's refusal to allow Mueller's expert to testify regarding "safety" issues and the trial court's ruling that Mueller produce Mercedes-Benz safety specifications. Mueller abandoned the expert issue at oral argument on October 28, 2014, and conceded that she had not provided this court with the transcripts necessary to consider whether the trial court erred in so limiting her expert's testimony. As to the Mercedes-Benz specifications issue, Mueller conceded at oral argument that the trial court had ultimately not required she produce the specifications. As such, we deem those issues abandoned and do not address them herein.

to determine whether Mueller's evidence was sufficient to demonstrate a "pecuniary loss" or a "material misrepresentation," we reverse and remand for further proceedings.

## BACKGROUND

¶ 4. In August 2011, Mueller filed this action, alleging that Kaufmann purposely misrepresented the condition of the 1995 Mercedes-Benz E320 it sold to Mueller. In February 2012, Mueller filed an amended complaint, alleging violations of Wis. Stat. §§ 100.18 and 218.0116(1)(f), as well as intentional misrepresentation. Specifically, Mueller alleged that Kaufmann intentionally misrepresented the condition of the car, including that the car:

> had signs of a blown head gasket, had a shifting problem, had known or visible leaks, had gauges and warning device[] problems and had an air conditioning system problem; that the restraining devices, seats and seat belts were not legal, that the horn was not legal, that the steering components were not legal, that the windshield wipers and washers were not legal and that the fuel system was not legal in that the fuel filler neck is being held in by duct tape.

Mueller asserted that Kaufmann's alleged misrepresentations entitled her to collect damages, including but not limited to: punitive damages, rescission of the purchase agreement, a refund of the purchase price, attorney fees, and other costs incurred during the action.

¶ 5. Following pre-trial motions, the trial court set forth in a written order the three alleged misrepresentations to be presented to the jury: (1) whether Kaufmann misrepresented that the fuel system was

legal; (2) whether Kaufmann misrepresented that the seatbelts were legal; and (3) whether Kaufmann misrepresented that there were no known or visible leaks, excluding minor seepage. A jury trial was held on October 28–30, 2013. Mueller, her daughter, and James Dentici, an automobile expert, testified on Mueller's behalf. The following facts were elicited at trial.

¶ 6. Mueller testified that on August 17, 2011, she purchased a 1995 Mercedes Benz convertible from Kaufmann for $16,021.89. Prior to purchasing the car, she read "[m]ost of" the accompanying Wisconsin Buyers' Guide. Mueller told the jury that at the time she purchased the car she understood the Buyers' Guide to set forth "the general condition of the vehicle." She testified that she did not see any problems with the car listed in the Buyers' Guide and that all of the boxes next to the car's "conditions" were checked as "legal." Mueller also said that Peter Obradovich, the salesman she spoke to when purchasing the vehicle, told her "it was a good car." Mueller told the jury that she relied on the Buyers' Guide and Obradovich's representations when deciding to purchase the vehicle.

¶ 7. Mueller told the jury that she began experiencing problems with the car only hours after purchasing it. She returned to Kaufmann's dealership that same day and reported that fluid had leaked out of the vehicle. Obradovich told her he would make arrangements with a mechanic to take care of the problem.

¶ 8. On August 20, 2011, Mueller returned to the dealership with her daughter to complain of other problems with the car. Because Kaufmann was busy, Mueller and her daughter were asked to return the following Monday.

¶ 9. Mueller and her daughter did return to Kaufmann's the following Monday, but they did not

bring the Mercedes with them. After speaking with Harry Kaufmann, Mueller and Kaufmann entered into the following written agreement: "August 22, 2011: I'm aware that the vehicle I purchased has no warranty, and out of good will, Harry Kaufmann Motorcars, Inc. will repair the following mechanical items; windshield washer hose, engine oil leak, air conditioning, and that the seatbelts are safe." Kaufmann then made arrangements to have a mechanic look at the car the following day, but Mueller admitted at trial that she never brought the car in for repairs. Mueller told the jury that approximately 300 miles have been put on the car since it was purchased and that it has been "parked" since "about a week after [she] bought the car."

¶ 10. During Mueller's testimony, her trial counsel asked her what the Mercedes was "worth today to you?" The trial court, *sua sponte,* refused to let Mueller respond, stating:

> You can ask her what she thinks she could get for the car if she sold it, but that's different than saying what's the car worth to you. I mean, it's worth a lot more than anybody else in the world would pay for it, but that's not a fair value of the car.
>
> . . . .
>
> What we're concerned about in the court, because we're trying to be objective about this, is to figure out if, in fact, the value of that car has changed, how much it has changed from an objective point of view. So that gets back to what does she think she could get for the car if she sold it?

While the trial court did not permit Mueller to answer what the car was "worth today to you?," it did permit her to answer what she thought she could get for the car if she sold it. She answered that she did not know.

¶ 11.   James Dentici, an expert hired by Mueller, testified that he inspected the Mercedes in the summer of 2013. He told the jury that he "noticed that there was leaking of oil several places; valve cover for one, cylinder head gasket for another, and also off the front." He stated that "[o]n the front of the engine, . . . and in the very front of it, where the radiator would be, right behind that, the front cover of the engine was actually caked with old oil residue. And the alternator, which is right below it, had oil dripping on it and it was caked with old oil residue." He believed the oil leaks had been present for 3000 to 4000 miles and were "very significant."

¶ 12.   Dentici also told the jury that he inspected the fuel filler pipe on the Mercedes, that is, the pipe that runs from the place where gas is put in the car to the tank. He testified that the fuel filler pipe was not rigidly attached to the car with a grommet as it was designed, but rather was held together with duct tape.

¶ 13.   Dentici also testified that upon his inspection of the rear seatbelts in the Mercedes he observed that "instead of plastic covering over the buckle mechanism, that there was electrical tape in place of that or holding it partially together." He told the jury that because the cover of the rear seatbelt was missing, there were three places that the rear seatbelt could latch.

¶ 14.   After Mueller rested her case, Kaufmann moved for a directed verdict. On October 30, 2013, the trial court conducted a hearing and granted Kaufmann's motion. The trial court found that rescission of the purchase contract or a refund of the purchase price were not proper remedies for WIS. STAT. § 100.18, and that Mueller had not otherwise shown that she had suffered any damages. On her intentional

misrepresentation claim, the trial court concluded that the alleged problems with the car were minor and thus did not warrant the court's imposition of the equitable remedy of rescission. Again, the court found no evidence of damages on this claim. Consequently, the trial court granted Kaufmann's motion for a directed verdict, dismissed both of Mueller's claims, and entered a written order finding that Kaufmann was entitled to costs. Mueller appeals.

## DISCUSSION

¶ 15. Mueller challenges the trial court's findings on directed verdict that: (1) rescission or refund of the purchase price were not available remedies for a violation of WIS. STAT. § 100.18; (2) there was insufficient evidence to show Mueller suffered recoverable, benefit-of-the-bargain damages with respect to both claims; and (3) the alleged misrepresentations were not material. Further, she appeals the trial court's evidentiary ruling prohibiting her from testifying as to the value of the car to her as purchased. We address each of her arguments regarding her statutory and common law claims in turn.

¶ 16. A motion for a directed verdict challenges the sufficiency of the evidence and may be granted when " 'the court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such a party.' " *Weiss v. United Fire and Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995) (quoting WIS. STAT. § 805.14(1)). In ruling upon a motion made at the close of a plaintiff's case, a trial court may grant the motion if " 'it finds, as

a matter of law, that no jury could disagree on the proper facts or inferences to be drawn therefrom,' and that there is no credible evidence to support a verdict for the plaintiff." *Id.* (citation omitted). Because the trial court is in a better position to decide the weight and relevancy of the testimony, we accord it substantial deference. *Id.* at 388–89. Thus, we will not overturn a trial court's decision to dismiss for insufficient evidence unless the record reveals that it was "clearly wrong." *Id.* at 389. A trial court is "clearly wrong" when it grants a motion for a directed verdict despite the existence of "any credible evidence" to support the claim. *See id.*

## I. WISCONSIN STAT. § 100.18.

■

¶ 17. Mueller's amended complaint set forth a statutory claim based on Wisconsin's Deceptive Trade Practices Act, WIS. STAT. § 100.18(1), "which generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 38, 270 Wis. 2d 146, 677 N.W.2d 233. Section 100.18(1) states, in pertinent part:

> No person, firm, corporation or association, or agent or employee thereof . . . with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise . . . shall make . . . an advertisement, announcement, statement or representation of any kind to the public . . . which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

*See id.* The statute provides a private cause of action for

persons suffering a "pecuniary loss" as a result of a violation of the statute and states that the remedy is recovery of the "pecuniary loss," and costs, including reasonable attorney fees. *See* § 100.18(11)(b)2.

¶ 18. Here, the trial court dismissed Mueller's WIS. STAT. § 100.18 claim on the grounds that she failed to present any evidence of recoverable damages, to wit, evidence of a "pecuniary loss."[3] The trial court concluded that the phrase "pecuniary loss" limited Mueller's recovery to benefit-of-the-bargain damages, that is, cost of repair or diminution in value. Mueller challenges the trial court's conclusion that a pecuniary loss under § 100.18 is limited to benefit-of-the-bargain damages and further argues that the statute allows for a refund of the purchase price or rescission of the purchase contract. Relatedly, Mueller argues that even if her damages are limited to benefit-of-the-bargain damages, she would have set forth sufficient evidence to demonstrate such damages had the trial court permitted her to testify regarding the value of the car to her. We turn to each question in turn.

A. WISCONSIN STAT. *§ 100.18 permits a plaintiff, in some instances, to recover the purchase price, but does not permit rescission.*

¶ 19. We first address Mueller's claim that the trial court erred when it concluded that WIS. STAT. § 100.18 limits recovery to benefit-of-the-bargain damages, which it described as cost of repair or diminution in value. That argument requires us to review the

---

[3] The trial court decided summary judgment on the narrowest grounds, only reaching the sufficiency of the evidence as to *damages,* saying that it assumed for the purposes of argument that Mueller could prove the *elements* of WIS. STAT. § 100.18.

611

remedies provided by the statute. Statutory interpretation " 'begins with the language of the statute.' " *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). The goal of "statutory construction is to discern the intent of the legislature." *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). We assume that the meaning of a statute is expressed in the words the legislature chose. *Kalal*, 271 Wis. 2d 633, ¶ 44. The context in which the operative language appears is important too because a statute's meaning may be affected by the context in which the words chosen by the legislature are used. *Id.*, ¶ 46. If our focus on the statute's language yields a plain, clear meaning, then there is no ambiguity, and the statute is applied according to its plain terms. *Id.* If the statutory language is unambiguous, it is unnecessary to consult extrinsic sources to facilitate interpretation. *Id.* The interpretation and application of § 100.18 is a question of law that we review *de novo*. *See Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶ 36, 319 Wis. 2d 1, 768 N.W.2d 615.

¶ 20.  WISCONSIN STAT. § 100.18(1) prohibits fraudulent representations to induce a sale. The statute provides that:  "Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and *shall recover such pecuniary loss,* together with costs, including reasonable attorney fees." *See* § 100.18(11)(b)2. (emphasis added). The statute does not define a "pecuniary loss."

¶ 21.  The trial court here implicitly concluded that a "pecuniary loss" under WIS. STAT. § 100.18 in-

cludes only benefit-of-the-bargain damages. Under the benefit-of-the-bargain rule, a purchaser's measure of damages "is typically stated as the difference between the value of the property as represented and its actual value as purchased." *Ollerman v. O' Rourke Co.*, 94 Wis. 2d 17, 52–53, 288 N.W.2d 95 (1980); *see also* Wis JI—Civil 2405 cmt. The trial court found that because Mueller presented no evidence of cost of repair or diminution in value, she had not offered any evidence of "pecuniary loss."

¶ 22. We conclude that although Wis. Stat. § 100.18 does not define "pecuniary loss," the plain meaning of the term is broad enough to encompass any *monetary* loss, including the full purchase price, subject to the claimant's proof. Contrary to the trial court's ruling, there is nothing in the words of the statute that limits "pecuniary loss" to benefit-of-the-bargain damages. Black's Law Dictionary defines pecuniary damages as "[d]amages that can be estimated and monetarily compensated." *Id.* at 473 (10th ed. 2009). A full refund of the purchase price can be monetarily quantified and compensated, even though rescission of a contract cannot.

¶ 23. Similarly, the relevant jury instruction for Wis. Stat. § 100.18—Wis JI—Civil 2418—equates pecuniary damages with monetary loss. The jury instruction directs jurors to consider whether a consumer "sustained a *monetary loss*." *See id.* (emphasis added). In other words, the plain and ordinary meaning of the phrase "shall recover such pecuniary loss" reveals that § 100.18 permits recovery of the purchase price, or something less, depending on the proof offered. However, nothing in the words themselves authorizes recovery through rescission of a contract.

613

¶ 24. The context of WIS. STAT. § 100.18's placement within the Deceptive Trade Practices Act, with its clear remedial purpose, also supports the conclusion that the legislature intended recovery for a "pecuniary loss" to include full purchase price, and not be limited to cost of repair or diminution in value. The Wisconsin Supreme Court has acknowledged that in creating § 100.18 the legislature's purpose was to "protect[] Wisconsin residents from untrue, deceptive, or misleading representation[s] made to induce action." *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 35, 301 Wis. 2d 109, 732 N.W.2d 792.

¶ 25. Permitting recovery for a full refund of the purchase price, in instances where such a refund is warranted, adheres to the remedial purpose of WIS. STAT. § 100.18. *See Novell v. Migliaccio*, 2008 WI 44, ¶ 53, 309 Wis. 2d 132, 749 N.W.2d 544 (the purpose behind § 100.18 is to protect the public by deterring sellers from making false representations). If consumers were only entitled to recover the cost of repairing damages resulting from a seller's misrepresentations, sellers would have little incentive to repair known problems before selling a product. Allowing consumers, under some circumstances, to recover the full purchase price of a product provides a true deterrent to sellers and thereby more fully adheres to the purpose of the statute.

¶ 26. While there appears to be no Wisconsin case directly deciding the meaning of "pecuniary loss," *K & S Tool* is instructive. In *K & S Tool*, the plaintiff's claim was based on WIS. STAT. § 100.18, as Mueller's claim is here. The Wisconsin Supreme Court upheld the jury's verdict finding that the misrepresentation caused K & S pecuniary loss. *Id.*, ¶ 41. The proof of pecuniary loss presented in that case was the purchaser's testimony

that K & S would not have purchased the 800–pound press at all if it had known the press was not the 1000–pound press it had ordered. *Id.*, ¶¶ 39–41. Although the court's holding concerned causation, the approval of an award of full purchase price lends support to the availability of full-purchase-price damages, upon proper proof.

¶ 27. The standard jury instruction for WIS. STAT. § 100.18(1) provides further support for construing "pecuniary loss" to include the full purchase price. That instruction, WIS JI—CIVIL 2418, is titled "Unfair Trade Practice: Untrue, Deceptive, or Misleading Representation: WIS. STAT. § 100.18(1)," (some capitalization omitted), and directs the jury to consider whether a plaintiff "sustained a monetary loss," and cites to *Benkoski v. Flood*, 2001 WI App 84, 242 Wis. 2d 652, 626 N.W.2d 851. WIS JI—CIVIL 2418 cmt. In *Benkoski*, we specifically rejected an argument that "pecuniary loss" damages under a related unfair trade practice statute, WIS. STAT. § 100.20(5), were limited to the benefit-of-the-bargain calculation. *Benkoski*, 242 Wis. 2d 652, ¶¶ 26–28. We held that a full-purchase-price refund was available under § 100.20(5), based upon the proof in that case, in order to further the legislative purpose of protecting consumers. *See Benkoski*, 242 Wis. 2d 652, ¶ 29.

¶ 28. Similarly, the differences between the jury instructions for statutory misrepresentation pursuant to WIS. STAT. § 100.18 and common law intentional misrepresentation highlight the legislature's clear purpose of providing more expansive remedies that would deter false representations for statutory misrepresentation claims. WISCONSIN JI—CIVIL 2405, the standard instruction for common law intentional misrepresentation, specifically instructs the jury that the measure of damages for intentional misrepresentation is the

benefit-of-the-bargain rule.[4] *See id.* As we have seen above, the jury instruction for WIS. STAT. § 100.18, that is, WIS JI—CIVIL 2418, includes no such direction. This is consistent with Wisconsin case law noting the differences between the claims and remedies of common law misrepresentation claims and those of statutory misrepresentation. *See Kailin v. Armstrong,* 2002 WI App 70, ¶ 40, 252 Wis. 2d 676, 643 N.W.2d 132.

¶ 29. In sum, based upon WIS. STAT. § 100.18's plain language and particularly the deterrent purpose of the statute as recognized in our case law, we conclude that a "pecuniary loss" can include monetary remedies like the cost of repair or diminution in value and may also include the possibility of a full refund of the purchase price. A "pecuniary loss" does not, however, include rescission, as a non-monetary remedy. As such, we reverse the trial court's decision to the contrary.

*B. The trial court erred when it prohibited Mueller from testifying as to the value of the car to her.*

¶ 30. Having concluded that a plaintiff setting forth a WIS. STAT. § 100.18 claim is not limited to benefit-of-the-bargain damages, but may also be entitled to a refund, we look to whether the trial court erred in concluding that Mueller did not present sufficient evidence to demonstrate that she was entitled to damages. Mueller argues that the trial court improperly

---

[4] The comments to WIS JI—CIVIL 2405 explain that recovery for intentional misrepresentation is limited to benefit-of-the-bargain damages. However, as we explain later, WIS JI—CIVIL 3068 and our case law expand damages to include rescission for intentional misrepresentation claims when the misrepresentation is "material." *See id.; see also Bank of Sun Prairie v. Esser,* 155 Wis. 2d 724, 731, 456 N.W.2d 585 (1990).

prohibited her from setting forth her damages evidence when it refused to let her testify as to what the car was worth to her.

¶ 31.  "We 'will not disturb a [trial] court's decision to admit or exclude evidence unless the [trial] court erroneously exercised its discretion.' " *Bonstores Realty One, LLC v. City of Wauwatosa*, 2013 WI App 131, ¶ 33, 351 Wis. 2d 439, 839 N.W.2d 893 (citation omitted). "A [trial] court erroneously exercises its discretion if it applies an improper legal standard or makes a decision that is not reasonably supported by the facts in the record." *Id.*

¶ 32.  The record reveals the follow exchange between the parties and the trial court during Mueller's testimony:

Q What's that vehicle worth today to you?

A What's it worth to—

THE COURT:  Wait, wait, wait, wait, wait.

You're asking for an expert opinion about the fair market value of the car?

[Mueller's trial counsel]:  No. I'm asking for her opinion as the owner of the vehicle.

[Kaufmann's trial counsel]:  No foundation she's seen [the car] in over a year.

THE COURT:  You can ask her what she thinks she could get for the car if she sold it, but that's different than saying what's the car worth to you. I mean, it's worth a lot more than anybody else in the world would pay for it, but that's not a fair value of the car.

[Mueller's trial counsel]:  I think though as an owner, she can testify not only what she thinks she could

get for the car but what it's actually worth to her personally.

THE COURT: Actually not. I mean, actually, if that were the case, we could have someone come in here say their 1973 AMC Gremlin is a beautiful antique and worth a million dollars, but it's only worth a million dollars to them.

What we're concerned about in the court, because we're trying to be objective about this, is to figure out if, in fact, the value of that car has changed, how much it has changed from an objective point of view. So that gets back to what does she think she could get for the car if she sold it?

¶ 33. Mueller argues that *D'Huyvetter v. A.O. Smith Harvestore Prod s.*, 164 Wis. 2d 306, 475 N.W.2d 587 (Ct. App. 1991), stands for the proposition that evidence of the purchase price of a product, in conjunction with the property owner's testimony that the product is worth nothing, is sufficient to establish benefit-of-the-bargain damages in an intentional misrepresentation case. We agree.

¶ 34. The D'Huyvetters sued for misrepresentations made relating to their lease of a grain silo. *Id.* at 317–18. The D'Huyvetters were told by the salesman that the silo was "oxygen-free," which turned out to be false. *Id.* at 321–22. The D'Huyvetters prevailed on their common law intentional misrepresentation claims following a jury trial and were awarded damages under the benefit-of-the-bargain rule. *Id.* at 319, 322–23. The silo distributor argued on appeal that the trial court erred by entering judgment on the jury's verdict rewarding the D'Huyvetters the full purchase price of the grain silo because there was no credible evidence of the value of the silo at the time of purchase. *Id.* at 322.

618

¶ 35. We concluded in *D'Huyvetter* that there was credible evidence of the purchase value, based on the owner's testimony that in her opinion the grain silo was worth "nothing." *Id.* at 323. We noted that under the benefit-of-the-bargain rule, "the measure of the purchaser's damages is the difference between the value of the property as represented and its actual value as purchased." *Id.* at 322–23. We went on to state that it is a well-settled rule in Wisconsin that a non-expert owner may testify concerning value, although the weight to be given to that testimony is for the trier of fact. *Id.* at 323. We stated:

> The only evidence plaintiffs produced regarding the *actual value* of the Harvestore at the time of purchase was Anitta D'Huyvetter's testimony that, in her opinion, the Harvestore was worth "nothing." *In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty. The weight to be attached to a non-expert owner's testimony is for the trier of fact.* We conclude that the plaintiffs produced credible evidence at trial to establish that the value of the Harvestore system as represented was $65,167, and that the value of the Harvestore system at the time of purchase was $0. Plaintiffs therefore established "loss of bargain" damages of $65,167.

*Id.* at 323–24 (internal citations omitted; second emphasis added).

¶ 36. Here, Mueller tried to testify, like Anitta D'Huyvetter, that the car she purchased from Kaufmann was worth nothing to her. The trial court, *sua sponte,* prevented her from doing so. Under *D'Huyvetter,* that testimony, in conjunction with her testimony of the purchase price, was sufficient evidence of damages to

survive a motion for a directed verdict. The weight to give her testimony is a question properly left to the jury to decide. *See id.*

¶ 37.   On appeal, Kaufmann argues that the trial court's exclusion of the testimony was proper because the court permitted Mueller to testify as to what she could sell the car for now. But *D'Huyvetter* does not limit the admissible testimony of a non-expert owner to the anticipated sale price. Mueller should have been permitted to tell the jury what the car was worth to her.

¶ 38.   In sum, because we conclude that the trial court erred when it prohibited Mueller from testifying as to the value of the car to her and because *D'Huyvetter* stands for the proposition that that testimony, in conjunction with Mueller's testimony of the purchase price, set forth credible evidence from which the jury could conclude that Mueller is entitled to a refund under Wis. Stat. § 100.18, we reverse and remand this case back to the trial court for further proceedings.[5]

## II.   Intentional Misrepresentation.

¶ 39.   Mueller also challenges the trial court's order dismissing her intentional misrepresentation claim.

---

[5] Kaufmann argues that we can also affirm the trial court's dismissal of Mueller's Wis. Stat. § 100.18 claim on other grounds, that is, that she was not "a member of the public." Although the trial court did not dismiss Mueller's statutory claim on this ground, we "can uphold the trial court on grounds it did not use." *See Wester v. Bruggink*, 190 Wis. 2d 308, 319, 527 N.W.2d 373 (Ct. App. 1994). However, we decline to address the issue because Kaufmann raises it for the first time on appeal, and we do not have a proper factual record on which to decide the issue at this time.

The court found that the equitable remedy of rescission was only appropriate in instances where "there is a total breach of the contract." Because there was no evidence of a total breach of the contract or evidence that the vehicle was worth nothing, the trial court found there was no evidence that warranted rescission, saying:

> I think if a court is going to exercise its equitable authority to award [rescission], the fraud has to be so substantial as to render unfair the bargain altogether, or at least at its essence. And that misrepresentations which diminish the value of the bargain, but do not reduce its value altogether, are ones where a damages remedy is superior to [rescission].
>
> But the key in making that determination of whether it goes to the essence or not, and whether it's total or not, and whether it's so significant that [rescission] is a better remedy than a damage remedy, you've got to know how significant the defect is. And I think you got to measure that, and I think the appropriate way to measure it is with the amount of dollars it would take to fix it.

And because Mueller offered no evidence of what it would cost to fix the car, the trial court found that she failed to prove benefit-of-the-bargain damages.

¶ 40.  Mueller argues on appeal that rescission is available as a remedy for intentional misrepresentation in this case. "Equitable remedies must, of necessity, place heavy reliance on the facts of the particular controversy." *Prince v. Bryant*, 87 Wis. 2d 662, 668, 275 N.W.2d 676 (1979). As such, "[w]e affirm equitable decisions unless the trial court erroneously exercised its discretion." *Salveson v. Douglas Cnty.*, 2000 WI App 80, ¶ 14, 234 Wis. 2d 413, 610 N.W.2d 184. As we previously stated, "[a trial] court erroneously exercises its

discretion if it applies an improper legal standard or makes a decision that is not reasonably supported by the facts in the record." *Bonstores Realty One*, 351 Wis. 2d 439, ¶ 33.

¶ 41.   It is well established in our case law that rescission is a remedy for intentional misrepresentation claims. *See Whipp v. Iverson*, 43 Wis. 2d 166, 171, 168 N.W.2d 201 (1969); *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 731, 456 N.W.2d 585 (1990). In fact, Wis JI—Civil 3068 provides that "[i]f consent of a party is gained through duress, fraud, or misrepresentation, that party may either avoid or ratify the contract." However, a misrepresentation of fact must be *material* before it can render a contract void or voidable. *Bank of Sun Prairie*, 155 Wis. 2d at 731. "A misrepresentation is material if it is likely to induce a reasonable person to manifest his assent, or if the maker knows that it is likely that the recipient will be induced to manifest his assent by the misrepresentation." *First Nat. Bank & Trust Co. of Racine v. Notte*, 97 Wis. 2d 207, 222–23, 293 N.W.2d 530 (1980).

¶ 42.   The problem with the trial court's conclusion that the alleged misrepresentations were not "substantial," that is, "material," is that whether a misrepresentation was material is a question for the jury. *See id.* at 224–25 (concluding "that whether the misrepresentation was material . . . w[as] [a] question[] for the jury"). In deciding that the alleged misrepresentations —that the fuel filler pipe was legal; that the seat belts were legal; and that there were no known or visible leaks, excluding minor seepage—were not material, the trial court erred by not submitting that question to the jury. And as we set forth above, Mueller should have

been permitted to testify as to the value of the car to her as purchased. *See D'Huyvetter*, 164 Wis. 2d at 323–24. The jury should have been allowed to hear Mueller's estimate of value and weigh all the competing evidence to decide whether Kaufmann made material misrepresentations that would have induced a reasonable person to purchase the car, and determine the extent of Mueller's damages. *See id.*

¶ 43.  Consequently, we reverse the trial court's decision to dismiss Mueller's intentional misrepresentation claim on those grounds and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.