# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 26, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP1322-CR**
**2018AP1323-CR**

Cir. Ct. Nos. **2013CF62**
**2013CF63**

## STATE OF WISCONSIN

## IN COURT OF APPEALS
## DISTRICT II

---

NO. **2018AP1322-CR**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CHADWICK P. SCHWERDTFEGER,

    DEFENDANT-APPELLANT.

---

NO. **2018AP1323-CR**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

PAULA L. SCHWERDTFEGER,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Walworth County: DAVID M. REDDY and KRISTINE E. DRETTWAN, Judges. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Chadwick P. Schwerdtfeger and Paula Schwerdtfeger, husband and wife, each appeal from a judgment of conviction and order awarding restitution payments to the victims of their crimes and from an order denying their postconviction motion for stay of restitution. The Schwerdtfegers raise numerous challenges to the sufficiency of the evidence, evidentiary rulings, and restitution. We reject each and affirm.

## BACKGROUND

**The Land Contract, Eviction, and Damages**

¶2    Most of the material facts are not in dispute. Additional facts will be provided as needed.

¶3    After residing in a Town of Whitewater property under a lease for a year, the Schwerdtfegers agreed to buy the property, in December 2007, pursuant

to a land contract from the vendors, GP and AP, for $350,400.[1] The Schwerdtfegers began making monthly payments on January 1, 2008. The outstanding balance was due May 1, 2023. The land contract said nothing about the personal property that the vendors left at the premises, such as a plasma TV, a hot tub, an above-ground swimming pool, a pool table, and kitchen appliances.

¶4      About two years passed without incident. But, by late 2010, the Schwerdtfegers had begun falling behind on payments. Consequently, in March 2011, the vendors commenced a foreclosure action, which immediately resulted in a March 10, 2011 order enjoining the Schwerdtfegers from causing any damage to any part of the property.[2] Per the order, no person could remove or damage "personal property left on the above-described real property by [vendors]," and it specifically identified a few items, such as the TV and hot tub. It required that a copy of the order "be served upon [the Schwerdtfegers] along with an authenticated copy of the Summons and Complaint." Per that action, on September 22, 2011, the court concluded that the defendants were in default,

---

[1] In accordance with WIS. STAT. RULE 809.86 (2017-18), we protect the privacy of crime victims by avoiding use of their full names. We refer to the husband-owner of the property as AP and the wife-owner as GP. We also sometimes refer to them more generically as the owners, vendors, or victims.

Also, all references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The title of the order was fairly clear and explicit as to its contents:

**ORDER DIRECTING DEFENDANTS NOT TO DAMAGE OR DESTROY THE PROPERTY OR FIXTURES AND IMPROVEMENTS THEREON AND/OR REMOVE, DAMAGE OR DISPOSE OF PERSONAL PROPERTY LEFT ON THE PREMISES BY PLAINTIFFS**

entered a judgment of strict foreclosure, and reiterated its prior order that no damage or waste should be committed on or to the property.

¶5 In April 2011, the vendors inspected the Whitewater property and took photographs. GP reported that the property appeared undamaged.

¶6 An eviction order required the Schwerdtfegers to vacate by December 6, 2011. On December 5, 2011, Deputy Jacob Skibba of the Walworth County Sheriff's Department went to the Whitewater property and spoke with the vendors regarding the eviction order and claimed property losses.

¶7 In mid-December, the vendors provided the police a twelve-page "inventory of the property damage and items missing."[3] As alleged by the

---

[3] The vendors alleged the following items were missing (the following quotes have been consolidated for ease of reading):

> Foyer closet doors, shelves, screws, and brackets • A gas fireplace • TV monitors and remotes from a security system • The entrance storm door • 2 sets of pool balls, 8 pool cues, pool table triangle, stained glass light above the pool table • A surround-sound system with a set of speakers, a remote for the system, a DVD player with remote, and a VCR • Inner components from a plasma screen TV were removed, leaving the "shell" of the TV • Landscaping/ paving bricks.

They also alleged the following items were damaged:

> The kitchen counters had cut marks • The security devices in several rooms room were torn off the windows, damaged, and left on the floor • The carpet and padding in several rooms had cigarette burns, food stains, and pet waste stains, requiring replacement • The walls in the dining room had holes in them • The walls in all rooms had scrapes, dents, and punctures • The refrigerator water lines were cut • The pool table was missing a pocket, there was a large "X" cut into the felt on top of the pool table, and the perimeter of the pool table was slashed • There was trash and spoiled food left throughout the house.

vendors, missing items included a gas fireplace, TV monitors, a surround-sound speaker system, and landscaping bricks. Damaged items included the kitchen counters with cut marks, several security devices torn from windows, walls in many of the rooms had holes, scrapes, and dents, and trash and spoiled food were left throughout the house.

¶8 Police spoke with Chadwick, who admitted that he took the gas fireplace, but noted that "there were five items on the list of property that [were] supposed to stay at the house, and the fireplace was not one of them," i.e., the vendors received the five things that they said they wanted. He said that other claimed damage was incidental, a result of being "messy."

**The Criminal Charges and Defenses**

¶9 The State charged Chadwick with (1) theft of movable property over $10,000, as a party to a crime and (2) felony criminal damage to property, as a party to a crime (Walworth County case no. 2013CF62). The State charged Paula with (1) theft of movable property over $10,000, as a party to a crime, (2) felony criminal damage to property, as a party to a crime, and (3) criminal damage to property (Walworth County case no. 2013CF63).

¶10 Paula pled no contest to count three, criminal damage to property, and was convicted on that count. The other charges were dismissed. Chadwick chose to go to trial.

¶11 During the pretrial conference, the defense argued that GP should not be allowed to testify about the value of missing or damaged property because she was not an expert. The court took an offer of proof from GP, who explained that she was a co-owner of the Whitewater property, was present for inventories of

5

the property in April and December 2011, was aware of items that were damaged, and was aware of the costs associated with repairing or replacing those items. The circuit court decided that, as an owner of the property and being familiar with it, GP had a sufficient basis to provide a lay opinion as to value.

¶12     Chadwick's primary defense was that he did not know that the vendors were still claiming ownership of the property items and that they had abandoned them. Because "intent" to steal someone else's property is a required element of the first two charges, he claimed he was innocent. He exercised his right not to testify at the trial.

**The Criminal Trial**

¶13     The State showed that the victims had commenced a foreclosure action and that action included a March 2011 order explicitly directing the defendants not to damage the property, fixtures, or improvements, or remove or damage the personal property left by the victims. The State also presented testimony about the court's October 14, 2011 foreclosure order, which extinguished any alleged ownership interest that the Schwerdtfegers claimed in the personal property and conveyed the Whitewater property (including personal property) to the victims. The Schwerdtfegers received notice of the order.

¶14     According to GP, Chadwick wanted to modify the parties' land contract agreement so that "he didn't pay any interest for 13 years." The victims' refusal eventually led to the foreclosure action and the court's injunction, as Chadwick had threatened to take the victims' house apart "screw by screw." GP explained that Chadwick was "angry because we would not agree to his terms." She testified that he threatened to squat "in the house for two years" and told GP

"to watch [her] back." GP stated Chadwick said she "had no idea what [the Schwerdtfegers] were capable of doing."

¶15 Skibba testified that Chadwick said that the victims "had received everything back that they were supposed to, including a TV, entertainment center, and the like." Detective Troy Pagenkopf also testified, indicating that Chadwick admitted that he took the gas fireplace because it was not listed on the court's order. Pagenkopf opined that Chadwick was "upset over the whole situation."

¶16 As for damages, GP testified to the following: gouges to the kitchen countertop were not present in April 2011. The countertop needed to be replaced, rather than repaired, because "[t]he cuts in it were deep ... [y]ou had to replace it." The cost was $2845. The refrigerator was damaged, where the "whole insides were out," and the "water lines were cut." It was irreparable and had to be replaced. There was damage to various security devices on the windows, with "hookups" missing for some and security cameras gone. It would cost $2304.39 to replace the security system.[4] The "brains" of the plasma TV were missing, which she was unable to replace, requiring a new TV for $4000. Cuts to the felt on the pool table that were not present in April cost $489.99 to repair. There was new damage to the carpeting: it was "full of urine" with "lots of stains" and dried vomit. The carpet in one room had "beer cans, burn holes, [and] different kinds of trash" all over it, and it was "impossible to get clean." Replacing the carpeting cost $8142.75.

---

[4] The system could not be repaired, she explained because the "original person" who installed it no longer did such work, and she "couldn't find the original parts ... to get it back up and running like it" had been.

7

¶17   GP testified that she did not give Chadwick permission to take or damage any of the above items from the Whitewater property.

¶18   The jury convicted Chadwick on both counts.[5]   The circuit court withheld sentence on both counts, imposed one year of probation on count one and three years of probation on count two, with ninety days' conditional jail time on count two.   The court ordered restitution of $75,867.77, noting that Chadwick could request a hearing on the matter.   The Schwerdtfegers requested a hearing.[6]

**The Criminal Restitution Hearing**

¶19   The case proceeded to a consolidated restitution hearing, with Court Commissioner Gerad Dougvillo assigned to hear the matter and make proposed findings and conclusions.   The victims initially sought $106,590.96, including attorneys' fees.   Farmers Insurance, which issued a policy taken out by the defendants on the property, paid $75,867.77 to the victims for the damages they incurred.   Consequently, Farmers Insurance also claimed restitution.

¶20   For two days, the court commissioner took testimony from both AP and GP, as well as Dale Dobbratz, a Farmers Insurance employee.   "The court found the testimony from all of the stated parties to be credible and reliable."

---

[5] During the jury instructions conference, the defense sought to exclude "the value questions in both the substantive instructions of theft and criminal damage to property."   The circuit court determined that felony theft required evidence of the market value of the property at the time of the theft.   Because the State conceded that there was no such evidence, the court removed the value question on theft, effectively dropping the charge to a misdemeanor.

[6] Following her no contest plea, Paula agreed to a joint restitution hearing before her sentencing.

8

¶21    The commissioner made the following findings of fact.    AP "testified at length regarding his involvement with the property in question and the losses incurred by himself and his wife."  He also "presented a packet in excess of 500 pages detailing the damage done to the property, the costs involved in repairing and replacing various items, photographs of the property and costs related [to] legal fees and travel expenses."  AP "went through the entire packet and was questioned for hours on the materials contained therein."

¶22    In addition, AP "testified regarding the federal bankruptcy proceedings initiated by the defendants" and the victims' attempt to protect their damage claims from being discharged.  They did so by filing a complaint in bankruptcy court and seeking a damage award of $147,320.56, plus punitive damages and attorneys' fees.  The bankruptcy court conducted an adversary proceeding.  "Ultimately, the bankruptcy court did make an award in favor of the [victims]," but for only $63,000 with no punitive damages or attorneys' fees.  AP said that the victims have not recovered anything from the bankruptcy judgment.

¶23    GP testified that the victims worked with attorneys from Brennan Steil S.C. "in order to assist in [the] civil action, the bankruptcy action and the criminal matter."  She further testified to the "attorney billing statements" which were submitted to the court, along with affidavits from the attorneys.  The attorneys' fees ultimately claimed were "solely related to the criminal case and not the civil matter or the bankruptcy proceedings."

¶24    Dobbratz confirmed that Farmers Insurance paid $75,867.77 to the victims, which was substantially lower than what the victims had claimed.  This discrepancy, Dobbratz explained, was a result of noncovered wear and tear deductions that decreased the value of numerous items.  He stated that the victims

9

were considered innocent parties who had an interest in the policy, and the loss was the direct result of the Schwerdtfegers' criminal conduct.

¶25 The Schwerdtfegers did not testify or call any witnesses on their behalf.

¶26 The court commissioner ordered posthearing briefing. Based on the evidence, the victims adjusted their claim to $65,982.70. This amount included a claim for attorneys' fees of $19,257.98, an amount that had been reduced from an original fee claim of $53,035.65. The victims provided the list of their damages for the amounts they requested which were not covered by the insurance payment.

¶27 The Schwerdtfegers argued, among other things, that (1) a felony-based restitution award should not be imposed against Paula, (2) restitution should not be awarded to Farmers Insurance, (3) the victims' attorneys' fees were not recoverable under the restitution statute, and (4) the doctrine of issue preclusion limited the victims' claim for damages to the amount determined by the bankruptcy court.

¶28 The court commissioner issued detailed and thorough findings of fact and conclusions of law, rejecting the Schwerdtfegers' arguments against restitution. The commissioner ordered restitution as requested: $65,982.70 to the victims and $75.867.77 to Farmers Insurance. It further determined that the Schwerdtfegers had the ability to the pay the restitution, jointly and severally. By written order, the circuit court adopted the court commissioner's findings of fact and conclusions of law.

¶29 The Schwerdtfegers filed a postconviction motion. As to those issues they now raise on appeal, they challenged the sufficiency of the evidence to

support Chadwick's convictions, the admissibility of GP's testimony about the value of the damaged property, and they revived their restitution arguments. After a hearing, the circuit court denied the motion. The Schwerdtfegers appeal.

## DISCUSSION

**Sufficient Evidence Existed to Support Chadwick's Convictions**

¶30     Chadwick argues the evidence was not sufficient to show that he intentionally stole someone else's property.

¶31     Misdemeanor theft requires that Chadwick "[i]ntentionally [took] and carrie[d] away … moveable *property of another*." WIS. STAT. § 943.20(1)(a) (emphasis added). "Intentionally" generally means that the defendant either had a purpose to do the thing or cause the result. WIS. STAT. § 939.23(3). The State must also prove that the defendant did not have the owner's consent to take the property and intended to deprive the owner of the property permanently. Sec. 943.20(1)(a).

¶32     Felony criminal damage to property similarly requires that Chadwick "intentionally cause[d] damage to any physical property of another," he knew the property belonged to another, and he knew that he did not have the owner's consent to cause the damage. *Bere v. State*, 76 Wis. 2d 514, 525, 251 N.W.2d 814 (1977); WIS. STAT. § 943.01(1). The State must also prove that the property was reduced in value by $2500. Sec. 943.01(2)(d).

¶33     Chadwick asserts that the evidence established that he believed the victims had abandoned any ownership interest in the personal property, thereby negating any intent that he was stealing someone else's property.

11

¶34 Whether evidence adequately supports a conviction is a question of law that we review de novo. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. But during our review, we pay high deference to a jury's verdict, and we will not overturn a jury verdict unless the evidence, viewed most favorably to upholding the conviction, "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681 (citation omitted). A defendant bears a heavy burden to demonstrate the evidence could not reasonably have supported a finding of guilt. *Id.* Our review is narrow, as we realize that "a jury is better able to get a sense of the trial's flow and the witness's credibility than is an appellate court" reading the trial transcript. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2011 WI App 101, ¶56, 335 Wis. 2d 151, 801 N.W.2d 781, *aff'd*, 2012 WI 70, 342 Wis. 2d 29, 816 N.W.2d 853. The special deference we accord a jury verdict (a verdict approved by the circuit court) means that "the verdict may not be overturned unless there is such a complete failure of proof that the verdict must be based on speculation." *Estate of Kriefall*, 335 Wis. 2d 151, ¶56 (citation omitted).

¶35 We reject Chadwick's argument, as it simply boils down to his disagreement with the jury's view of the evidence, a view that we find supported and reasonable. Actually, Chadwick frames the issue correctly, but he comes out on the losing side. In this regard, he points out that the circuit court noted that "there was evidence in the record that might support a claim of abandonment," but that the court also concluded that "there's also sufficient evidence to the contrary." When a circuit court finds that sufficient evidence supports both sides, it makes Chadwick's already heavy burden nearly insurmountable. Stated another way, if just one reasonable view of the evidence supports the conviction, it does not

matter that another reasonable view of the evidence supports reversal. *See State v. Poellinger*, 153 Wis. 2d 493, 506-07, 451 N.W.2d 752 (1990).

¶36    Sufficient evidence supports the convictions. The evidence shows not only that the victims had retained an ownership interest in the Whitewater property, including any personal property that existed, it also shows that Chadwick knew they retained such an interest.

¶37    In March 2011, the court enjoined the Schwerdtfegers from "committing waste upon or doing any damage to" the property or "removing, damaging or disposing of personal property" that the victims left behind; in September, the court issued a foreclosure order, which again referred to the personal property left behind by the victims and referring to the order that the property must remain undamaged and intact; in October, the court issued a conveyance order stating that any alleged interest claimed by the Schwerdtfegers in the personal property was extinguished and full ownership interest of the personal property was conveyed to the victims. These court orders gave official and direct notice to the Schwerdtfegers that the victims still claimed an interest, if not a full interest, in the personal property. They readily support the verdict.[7]

¶38    Chadwick fails to acknowledge, much less rebut, the above or other evidence showing the victims' ownership of the personal property. Instead, he asserts that the land contract is a "major piece of evidence" demonstrating that he

---

[7] We will not recount all of the evidence indicating Chadwick knew that the victims retained an ownership interest in the personal property, but we note that there was ample additional evidence, e.g., Chadwick threatening that he would take the victims' home apart "screw by screw."

did not intend to steal the victims' personal property. Because the contract does not refer to the personal property and makes the real property the only subject of the deal, then it "neither conferred nor retained an ownership interest" in the personal property for the victims. Apparently, the jury was unpersuaded that the land contract established abandonment, and it certainly is not grounds to reverse its verdict.

¶39   In a land contract, silence about ownership in personal property is not necessarily surprising (it is a "land" contract) and, more importantly here, it does not support the proposition that the victims abandoned or somehow relinquished their ownership in the personal property. The absence of a provision about personal property in the land contract is, in this case, simply an absence of evidence, arguably, either way. *See Westmas v. Creekside Tree Serv., Inc.*, 2018 WI 12, ¶71, 379 Wis. 2d 471, 907 N.W.2d 68 (Bradley, R., J., dissenting) ("Under the best of circumstances, it's really difficult to tease meaning out of silence.").[8]

¶40   Additionally, in support of his argument that he believed the property was his and therefore he was not guilty of stealing it, Chadwick points to the testimony of Pagenkopf as to what Chadwick had earlier reported to him, including that he believed that he was the owner of the missing and damaged property. Chadwick points to evidence indicating that damage and missing property took place before the April 2011 court orders. As with all of the

---

[8] A case cited by Chadwick in support of his abandonment theory, *see Voss v. Ruppenthal*, No. 1992AP0838, unpublished slip op. (WI App Mar. 3, 1993), is unpublished and, per WIS. STAT. RULE 809.23(3)(a) and (b), may not be cited as precedent or authority.

testimony, it was for the jury, which heard the testimony and saw the witnesses, to weigh and consider the evidence. Looking at all of the evidence as a reviewing court, we certainly cannot say that no jury could rationally reach this verdict.

**The Circuit Court Did Not Err in Admitting GP's Lay Opinions About Repair, Replacement, and Value of the Personal Property Damaged by Chadwick**

¶41 Chadwick argues that the circuit court erred when it allowed GP to offer her lay opinions regarding whether personal property items needed repair or replacement and regarding the values of the damaged property. He asserts the State failed to show that she was qualified and had the necessary foundation to testify on this issue.

¶42 Specifically, he notes that, after testifying on a number of damaged or missing items, GP admitted that she only had receipts as to some items and merely estimated as to others (such as the security system and pool table light). GP also acknowledged that she had never performed property valuations, had not occupied the property since 2005, had no knowledge of when items were purchased prior to 2006, and had only purchased some, but not all, of the items for which she had collected receipts.

¶43 "We will uphold a circuit court's evidentiary ruling if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399 (citation omitted). On appeal, the issue "is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in

15

accordance with the facts of record." ***State v. Echols***, 2013 WI App 58, ¶14, 348 Wis. 2d 81, 831 N.W.2d 768 (citation omitted). We will not find discretionary error if there is a reasonable basis for the court's determination. *See **State v. Johnson***, 149 Wis. 2d 418, 429, 439 N.W.2d 122 (1989), *aff'd on reh'g*, 153 Wis. 2d 121, 449 N.W.2d 845 (1990).

¶44     WISCONSIN STAT. § 907.01 governs "[o]pinion testimony by lay witnesses." It provides as follows:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are all of the following:
>
> (1)  Rationally based on the perception of the witness.
>
> (2)  Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
>
> (3) Not based on scientific, technical, or other specialized knowledge within the scope of a witness under [WIS. STAT. §] 907.02(1).

Sec. 907.01(1)-(3). Chadwick primarily argues that subsec. (1) was not met, i.e., GP's lay opinions were not, he argues, rationally based on her perceptions. We disagree.

¶45     "Lay opinion evidence is generally permitted when such opinion is based on matters about which the witness is actually competent to testify ...." ***Poston v. Burns***, 2010 WI App 73, ¶22, 325 Wis. 2d 404, 784 N.W.2d 717. This includes "personal observations by the lay witness" and her "personal experience." ***Id.*** In general, a nonexpert owner may testify as to the value of their property, whether it is real estate or personal property. ***Mueller v. Harry Kaufmann Motorcars, Inc.***, 2015 WI App 8, ¶35, 359 Wis. 2d 597, 859 N.W.2d 451. The weight accorded such testimony is for the trier of fact. ***Id.***

16

¶46    Here, GP testified, among other things, that she was the owner of the kitchen countertop, refrigerator, home security system, plasma TV, and carpeting at the Whitewater residence. She also personally observed the damage to these items. For the kitchen countertop, refrigerator, and carpeting, GP's observations of and personal familiarity with that property helped to form the basis for her conclusion that the items were beyond repair. For the home security system and the plasma TV, GP explained her experience in trying to repair the damage.

¶47    On this record, we cannot conclude that the circuit court erroneously exercised its discretion in determining that GP was qualified to offer her lay opinions as to whether an item should be repaired or replaced or estimating the value of a particular piece of property. GP's personal knowledge and perceptions of the various items were based on her ownership of the items, on her having personally purchased a number of them, on her having personally observed the damage, on her research and attempts to repair certain items and their cost, and her reliance on several invoices. This is personal knowledge of a consumer and owner of the subject property. Chadwick fails to explain with any specificity why the court erred given GP's experience and knowledge.

¶48    A noted legal commentator points out that subsec. (1) "simply reiterates the first-hand knowledge requirement of [WIS. STAT.] § 906.02." Daniel D. Blinka, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE, § 701.1 (4th ed. 2019). We acquire first-hand knowledge, and form lay opinions from it, via our five senses, but also through our collective experiences. *Id.* Not only did GP have particular knowledge with respect to many of these items and performed some specific investigation, she has also been a common consumer for many years, learning about purchases, pricing, repairs, and the like.

17

¶49     To the extent GP's knowledge or testimony contained gaps or weaknesses, it then was for Chadwick to challenge it in court and for the jury to consider and weigh it, rather than excluding the evidence altogether. "Juries are unlikely to give much weight to a witness's unsupported opinion or conclusion. The proponent, then, is normally motivated to have the witness explain his or her generalizations and testify about the firsthand observations that buttress them." *Id.* GP's lay opinions could be, and were, challenged on cross-examination and critiqued during closing remarks. This of course included challenges to her opinions or inferences on the value of property or its related damage. But, as the court correctly ruled, GP may testify in the first instance. It is then for the jury to assess her credibility and determine the weight to accord her testimony. Here, the jury found that the value of the damaged property exceeded $2500.[9]

---

[9] Chadwick raises for the first time in his reply brief an argument that the receipts submitted by GP establishing repair estimates were inadmissible hearsay. We will not, as a general rule, consider arguments raised for the first time in a reply brief, and we see no reason to depart from that rule in this case. *See Schaeffer v. State Pers. Comm'n*, 150 Wis. 2d 132, 144, 441 N.W.2d 292 (Ct. App. 1989). Chadwick fails to identify any objection on this basis in the record before the circuit court. It is a fundamental principle of appellate review that issues must be preserved in the circuit court. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. Evidentiary issues that are not preserved in the circuit court generally will not be considered on appeal. *Id.* The party who raises an issue on appeal bears the burden of showing that the issue was raised before the circuit court. *Id.* This is not a mere rule of convenience: it is essential to the orderly administration of justice, as it promotes efficiency and justice by giving the parties and the trial court notice, allowing the court to correct or avoid the alleged error, encouraging the attorneys to prepare diligently and it avoids sandbagging by failing to object and later claiming error, all to the end of eliminating the need for appeal. *Id.*, ¶¶11-12. Moreover, Chadwick does not identify which receipts are at issue, or ultimately develop any argument that the established damage amounted to less than $2500. As to the restitution hearing, Chadwick's argument suffers from the same deficits, in addition to failing to address this issue in the context of the more relaxed evidentiary rules in that proceeding, as noted below. *See infra* ¶94.

**The Circuit Court Did Not Err by Ordering Restitution to Farmers Insurance**

¶50    The Schwerdtfegers argue that the circuit court erred by ordering restitution to Farmers Insurance because WIS. STAT. § 973.20(5)(d) only authorizes reimbursement to the insurer "if justice so requires," and the commissioner did not make such a finding, such that the court's order adopting the court commissioner's findings was unauthorized.  We disagree.

¶51    "A request for restitution, including the calculation as to the appropriate amount of restitution, is addressed to the circuit court's discretion and its decision will only be disturbed when there has been an erroneous exercise of that discretion."  *State v. Gibson*, 2012 WI App 103, ¶8, 344 Wis. 2d 220, 822 N.W.2d 500.  Whether the court, however, has the statutory authority to order restitution is a question of law, and our review is de novo.  *Id.*  Because the purpose of the restitution statute is to provide compensation for damages caused by criminal conduct, the statute should be interpreted broadly and liberally.  *Id.*, ¶10.

¶52    Whereas the restitution statute *requires* the court to order restitution ("shall order") to compensate the victims of a crime, *see* WIS. STAT. § 973.20(1r), it is in the court's discretion ("may require") as to whether to order reimbursement to an insurer, *see* § 973.20(5)(d).  Specifically, for insurers, the statute states:  "In any case, the restitution order *may require* that the defendant do one or more of the following:  … *If justice so requires*, reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section."  *Id.* (emphasis added).

19

¶53    The Schwerdtfegers complain that the court commissioner did not state that "justice" required reimbursement for Farmers Insurance, contend that the court lacked authority to order restitution, and assert it erroneously exercised its discretion in doing so.

¶54    We reject the Schwerdtfegers' contention that the reimbursement order is flawed because the court commissioner did not explicitly state that justice required the reimbursement.  Simply because a court does not use particular "magic words" within its decision or reasoning does not constitute reversible error. *See **State ex rel. West v. Bartow***, 2002 WI App 42, ¶¶9-10, 250 Wis. 2d 740, 642 N.W.2d 233; ***Michael A.P. v. Solsrud***, 178 Wis. 2d 137, 151, 502 N.W.2d 918 (Ct. App. 1993).

¶55    Here, the commissioner found that Dobbratz's testimony regarding Farmers Insurance's payment was credible and reliable.  Indeed, the Schwerdtfegers raise no dispute regarding the specific components of that payment.  It is implicit in the commissioner's statement that Farmer's loss "was a direct result from the defendant's [criminal] conduct."  It is no stretch for one to reasonably infer that the commissioner concluded that "justice" required reimbursement of Farmer Insurance's loss due to the Schwerdtfegers' criminal conduct and their ability to pay. *See **State v. Gary M.B.***, 2004 WI 33, ¶26, 270 Wis. 2d 62, 676 N.W.2d 475 (recognizing that "magic words" are not required, a circuit court's decision can be affirmed as long as the record indicates that the appropriate considerations are implicit in the court's determination); *see **West***, 250 Wis. 2d 740, ¶10 (although circuit court did not refer to relevant statute, its reasoning showed that it considered the standard and properly exercised its discretion).  Remanding this case to allow the circuit court to make explicit this

implicit finding "would be both superfluous and a waste of judicial resources." *See State v. Denny*, 2017 WI 17, ¶81 n.23, 373 Wis. 2d 390, 891 N.W.2d 144 (quoting *Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co.*, 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984)).

¶56     Other cases support our conclusion. *See, e.g.*, *State v. Fernandez*, 2009 WI 29, ¶¶61-62, 316 Wis. 2d 598, 764 N.W.2d 509 (reimbursement award to the insurers would not be reversed; the court has discretion to make the award, evidence was submitted that the insurers suffered losses due to the defendant's conduct, and the defendant appeared to be able to pay); *Gibson*, 344 Wis. 2d 220, ¶15 (reimbursement award to insurer upheld despite circuit court's failure to expressly address the "justice" requirement; the court has wide discretion, the evidence was sufficient to show the insurer's loss, and the court's determination that justice required reimbursement was implicit in its determination).

¶57     The Schwerdtfegers attempt to distinguish the above cases on the ground that they only deal with reimbursement of insurers of crime victims, not insurers of criminal defendants. We fail to follow. The payments made by Farmers Insurance went to the crime victims here, not to the criminal defendants, the Schwerdtfegers. Further, they have not shown why it is relevant that they requested and paid for the policy. A standard property policy pays the damage amounts to the owners of the damaged property, whether or not that is the same person or entity who took out the policy.

¶58     The Schwerdtfegers also point out that the restitution statute only allows payment of "special damages" and not "general damages." WIS. STAT. § 973.20(5)(a). They argue that the payments made by Farmers Insurance were for general and not special damages, thereby prohibiting reimbursement of

Farmers Insurance. We reject the argument as undeveloped. *See State v. Culver*, 2018 WI App 55, ¶27 n.15, 384 Wis. 2d 222, 918 N.W.2d 103 (we need not address undeveloped arguments). The Schwerdtfegers do not identify any objection presented to the court commissioner on this ground. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (issues that are not preserved at the circuit court generally will not be considered on appeal). On appeal, they fail to explain the differences between general and special damages or analyze how the insurance payments were solely for general damages.

¶59 We nonetheless note that the Schwerdtfegers have failed to establish that the insurance payments were for special and not general damages. "General damages under the criminal restitution statute are those that 'compensate the victim for damages such as pain and suffering, anguish or humiliation,' damages crime victims often experience. In contrast, special damages as used in the criminal restitution context encompass 'harm of a more material or pecuniary nature' and represent the victim's actual pecuniary losses." *State v. Holmgren*, 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999) (citations omitted). If an expenditure is readily ascertainable and paid out because of the crime, it is appropriate as special damages. *Id.* Because the Schwerdtfegers have not identified any insurance payments that went for such damages as pain and suffering and humiliation, this challenge is rejected.

**We Have No Basis to Deny the Victims' Attorneys' Fees Recovered Under WIS. STAT. § 973.20(5)(b) as the Schwerdtfegers Fail to Identify Any Particular Fee That Was Inappropriate**

¶60 Included within the $65,982.70 portion of the restitution award were the victims' attorneys' fees. The Schwerdtfegers appear to acknowledge that fees could in theory be recoverable, but the fees must be directly tied to a pending

criminal matter. Because some of the claimed fees were incurred, the Schwerdtfegers assert, before the criminal matter began, the entire fee award should have been denied.

¶61 As noted, we examine an award of restitution for an erroneous exercise of discretion, but whether the court had authority to make the particular restitution award under certain facts is a question of law that we examine independently. *See **Gibson***, 344 Wis. 2d 220, ¶9.

¶62 WISCONSIN STAT. § 973.20(5)(b) states:

> In any case, the restitution order may require that the defendant do one or more of the following:
>
> ….
>
> (b) Pay an amount equal to the income lost, and reasonable out-of-pocket expenses incurred, by the person against whom a crime considered at sentencing was committed resulting from the filing of charges or cooperating in the investigation and prosecution of the crime.

¶63 The statute is clear: restitution is available for expenses resulting "from the filing of charges or cooperating in the investigation and prosecution of the crime." WIS. STAT. §973.20(5)(b). Fees incurred by the victim in the investigation of a possible crime takes place before charges are pending.[10]

¶64 The victims were aware that only fees incurred under WIS. STAT. § 973.20(5)(b) would be allowed, and explained so in their briefing, even admitting that they had to reduce their initial claim of fees in order to be in

---

[10] The Schwerdtfegers largely base their argument on an unpublished per curiam case, which under WIS. STAT. RULE § 809.23(3)(b), and as indicated in footnote 8, may not be cited

23

accordance with the statute (in their initial brief, they noted one section of damages "must also be modified downward due to the appropriate amount of attorney fees owed"). The commissioner took note of that reduction, after explaining its understanding of fees recoverable under the statute, and then provided its conclusion:

> In regards to the testimony and evidence put forward during the restitution hearing, both [GP and AP] testified in regards to the hiring of counsel to aid in all of the matters tied to the property and the defendants along with the costs associated. Those costs were included in the voluminous packet testified to by [AP] as well as the affidavits submitted by private counsel. The Court notes the original claim for attorneys fees included all of the work done for [GP and AP] but was since limited to the work done as it solely relates to the criminal cases. The Court will not fault the victims here for properly amending their claim despite the defendants' wishes. The Court believes that sufficient evidence was submitted in relation to these fees and given the exceptionally complex nature of this criminal case, the fees requested are reasonable under Wis. Stat. § 973.20(5)(b).

Thus, the commissioner, after reviewing the voluminous documents and hearing the testimony, which he noted was credible and reliable, determined that the submitted fees were "solely relate[d] to the criminal cases."[11] The circuit court adopted these findings and conclusions.

¶65 The Schwerdtfegers have failed to identify any fees that were not related to the investigation of the charges. Based on the foregoing, we conclude that the commissioner and court were statutorily authorized to make this award of

---

[11] The commissioner also noted that the fees were only related to the criminal matter in its Findings of Fact: "As noted on the affidavits and by way of clarification from [one of the victims' attorneys], the amounts now being claimed are limited to those solely related to the criminal case and not the civil matter or the bankruptcy proceedings."

attorneys' fees and properly exercised their discretion by considering the facts of record, applying the correct standard of law, and reaching a rational result.

**The Circuit Court Did Not Err in Ordering that Paula Pay Restitution**

¶66     Paula Schwerdtfeger argues that the restitution order is without basis as to her because there is no evidence that showed she intentionally damaged another's property or was otherwise a precipitating cause of such damage.  We disagree.

¶67     We first repeat a few fundamental principles.  Restitution's primary goal is to compensate the victim.  *Gibson*, 344 Wis. 2d 220, ¶10.  Unless the court finds a substantial reason not to do so, ordering restitution is presumed, as it "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution."  *Id.* (citation omitted); *State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994). We bear in mind that the statute should be interpreted liberally and broadly.  *See Gibson*, 344 Wis. 2d 220, ¶10.

¶68     Before ordering restitution, a court must find a "causal nexus" between the "crime considered at sentencing" and the victim's alleged damage. *State v. Queever*, 2016 WI App 87, ¶11, 372 Wis. 2d 388, 887 N.W.2d 912 (citation omitted).  The circuit court has discretion when deciding whether the defendant's criminal conduct was a substantial factor in causing any claimed expenses.  *Id.*, ¶12.  When determining restitution, all of the conduct related to the commission of the crime may be considered.  *State v. Rodriguez*, 205 Wis. 2d 620, 627-29, 556 N.W.2d 140 (Ct. App. 1996).  As another court put it, "a causal link for restitution purposes is established when 'the defendant's criminal act set

into motion events that resulted in the damage or injury.'" ***State v. Longmire***, 2004 WI App 90, ¶13, 272 Wis. 2d 759, 681 N.W.2d 534 (citation omitted). Restitution includes "all facts and reasonable inferences concerning the defendant's activity *related to* the 'crime' for which the defendant was convicted, not just those facts *necessary* to support the elements of the specific charge." ***State v. Canady***, 2000 WI App 87, ¶10, 234 Wis. 2d 261, 610 N.W.2d 147 (citation omitted).

¶69     At her plea hearing, Paula stated that she understood the elements of the crime, which included that she caused damage to physical property of another and that she intended to do so. Her attorney stipulated that the facts set forth in the criminal complaint established a factual basis for her plea to criminal damage to property. Those are the same facts set forth in the criminal complaint against Chadwick. Those facts, and the reasonable inferences that can be made from them, support the court's conclusion that Paula's criminal conduct was a substantial factor in causing the victims' losses.

¶70     Specifically, the complaint alleges that between the court's injunction order and the Schwerdtfegers moving out of the Whitewater property, numerous items of personal property were missing and many others were damaged. It alleges that Chadwick talked with the police about the dispute with the victims, about various items of property that were allegedly missing or damaged, and that his wife, Paula, "was familiar with all items [Chadwick] discussed with [police] because Paula Schwerdtfeger lived at the home with [Chadwick] for 6 years." The commissioner made findings of fact of Paula's no contest plea to criminal damage to property and her stipulation that the complaint's alleged facts could be used as a basis for her plea.

¶71    Paula contends that "there is absolutely nothing in that complaint that describes an 'activity,' or a 'conduct,' or an 'act,' or an 'entire course of conduct' that was any kind of factor" that could cause any of the claimed expenses. We disagree. The complaint describes enough information to allow the circuit court to conclude that Paula's course of conduct, along with Chadwick, was a substantial factor in causing the claimed losses. A property dispute with the owners arose and, upon the eviction, property items were missing, property items were damaged, and Paula and Chadwick were the only residents at the premises for the prior six years. Her claim that "nothing" in the complaint supports her involvement in causing the damage is not well-founded.

¶72    Paula also makes a somewhat confused argument based on her no contest plea being insufficient to support the restitution order. When a defendant pleads no contest, the plea admits his or her past criminal conduct, relieving the State's burden to prove all of the elements of the crime and allows entry of a criminal judgment conviction without a trial. *See **Rodriguez***, 205 Wis. 2d at 628. It is an admission that the totality of her criminal conduct caused property damage to the victims. *See **id.*** To the extent we understand her argument, we believe the above answers and rejects it.

**Neither Claim Nor Issue Preclusion Bars or Otherwise Affects the Criminal Restitution Order**

¶73    The Schwerdtfegers assert that the entire restitution judgment of $141,850.47 is barred by claim and/or issue preclusion, as the victims had already prosecuted and secured their property damage claim in bankruptcy court, which determined a total recovery of $63,000. They contend that AP's and GP's recovery is limited to the $63,000 bankruptcy court judgment amount, and because

the Farmers Insurance payment was for a greater amount, their restitution obligation will be satisfied. We reject the Schwerdtfegers' claim and issue preclusion arguments.

***No Accord and Satisfaction Has Been Shown***

¶74 First, we note that it appears that the Schwerdtfegers' primary concern is that they will be compelled to make a double payment—that the damages awarded by the restitution order will provide GP and AP with a double recovery. However, they fail to address the issue of a double recovery directly under the restitution statute and applicable case law.

¶75 As our supreme court explained in ***Huml v. Vlazny***, 2006 WI 87, ¶22, 293 Wis. 2d 169, 716 N.W.2d 807, "An overview of [WIS. STAT.] §§ 973.09 and 973.20 reveals that a fundamental policy of these statutes is to make victims whole without allowing them to receive double recoveries." To this end, the statutes afford three opportunities to avoid double recovery. First, a defendant may assert any defense to the amount, including accord and satisfaction or setoff, in the sentencing hearing at which the circuit court determines whether to impose restitution. Sec. 973.20(14)(b); ***State v. Muth***, 2020 WI 65, ¶19, 392 Wis. 2d 578, 945 N.W.2d 645 (in order that a victim may be made whole but not receive double recoveries, a defendant may assert a defense of accord and satisfaction in the sentencing hearing); ***State v. Sweat***, 208 Wis. 2d 409, 424, 561 N.W.2d 695 (1997).

¶76 Second, before a circuit court reduces any unpaid restitution to a civil judgment upon termination of probation, the probationer may prove that the

28

victim "has already recovered a judgment against the probationer for the damages covered by the restitution order." WIS. STAT. § 973.09(3)(b).[12]

¶77    Third, in a civil action a defendant may prove that restitution payments set off part or all of a civil judgment in favor of the victim. WIS. STAT. § 973.20(8); *Herr v. Lanaghan*, 2006 WI App 29, ¶18, 289 Wis. 2d 440, 710 N.W.2d 496 (Ct. App. 2006) (a civil judgment may be reopened where restitution in a criminal case is ordered subsequent to the civil judgment in order to determine whether damages awarded and covered by the civil judgment were, wholly or partially, the same special damages covered by the criminal restitution order).

¶78    Here, as the court commissioner noted, the State conceded that payments received under a separate proceeding or order can offset the amount ultimately collected through a restitution order, however, that was not applicable because "no monies have been received to date." *See* WIS. STAT. § 973.20(8) ("Any restitution made by payment or community service shall be set off against any judgment in favor of the victim in a civil action arising out of the facts or events which were the basis for restitution."). Having paid nothing, it is not surprising that the Schwerdtfegers did not avail themselves of a claim of accord and satisfaction.

¶79    Thus, instead of directly addressing the concern with a double recovery, the Schwerdtfegers try to fit a round peg into a square hole with their claim and issue preclusion arguments, arguing that the entire and much larger

---

[12] *See also* **Huml v. Vlazny**, 2006 WI 87, ¶32, 293 Wis. 2d 169, 716 N.W.2d 807 (citing Legislative Reference Bureau Drafting File for 1989 Wis. Act 188, Analysis by the Legislative Reference Bureau of 1989 A.B. 316: "[R]estitution unpaid at the end of a probation or parole period is docketed as a civil judgment if the victim has not already obtained a judgment for the damages covered by the restitution order.").

restitution award is barred. In doing so, they wholly ignore that the vendors and the insurer suffered different losses. None persuade.

¶80 First, a plurality of our supreme court has made clear that restitution is a "not a cause of action but a sanction for criminal conduct owned by the State; as such, victims cannot unilaterally terminate the State's interest in making them whole, rehabilitating the offender and deterring criminal conduct." *Muth*, 392 Wis. 2d 578, ¶2. As noted, while defenses addressing the amount owing are available under WIS. STAT. § 973.20(14)(b), *defenses that could be raised in civil actions challenging liability are not*. *Muth*, 392 Wis. 2d 578, ¶23-24 ("any defense … means any defenses as to the amount of restitution, and not defenses to liability for restitutionary payments"); *State v. Walters*, 224 Wis. 2d 897, 904-05, 591 N.W.2d 874 (Ct. App. 1999) (because restitution is a remedy that belongs to the State, civil defenses which could be used as a complete bar to a subsequent civil action do not preclude a restitution order in a criminal proceeding). Thus, accord and satisfaction is available but not claim or issue preclusion—doctrines that bar liability as to claims or certain issues. A cursory review of these doctrines and the restitution statute provide additional bases as to why this is so.

*Claim Preclusion Does Not Apply*

¶81 Under claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (alteration in original; citation omitted). Whether claim preclusion applies to a specific set of facts is a question of law that we review de

novo. *See **DePratt v. West Bend Mut. Ins. Co.***, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983).

¶82    In order for the earlier proceedings to bar the claim of the present suit, there must be: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." ***Northern States***, 189 Wis. 2d at 551.

¶83    We first note that the claim preclusion argument advanced by the Schwerdtfegers is markedly lacking and ultimately undeveloped. *See **Culver***, 384 Wis. 2d 222, ¶27 n.15. They mention the above requirements, but never actually apply the facts of this case to any of the three.[13]

¶84    That said, among other things, the Schwerdtfegers have failed to show identity of parties, given that neither the State nor Farmers Insurance participated.    They have not developed any argument to address Farmers Insurance's absence.    As to the State, as noted above, "restitution in a criminal case is a remedy that belongs to the state, not to the victim." ***Muth***, 392 Wis. 2d 578, ¶21 (citing ***Huml***, 293 Wis. 2d 169, ¶44.)    The Schwerdtfegers have not shown that the victims effectively represented, and protected, the interests of Farmers Insurance and the State in the bankruptcy proceeding. ***Pasko v. City of Milwaukee***, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72 ("Privity exists when a person is so identified in interest with a party to former litigation that he or

---

[13] We agree with the State that claim preclusion was insufficiently raised below, with scant mention and no development to speak of.

she represents precisely the same legal right in respect to the subject matter involved.").

¶85    Moreover, and as obvious, there is no identity between the causes of action in the two proceedings or even a common nucleus of operative facts. *See Kruckenburg v. Harvey*, 2005 WI 43, ¶25-26, 279 Wis. 2d 520, 694 N.W.2d 879.

¶86    When the bankruptcy proceeding took place, no criminal case was pending. The State had no opportunity to litigate its interests. As to the victims, additional information was gathered through discovery, which took place before the restitution hearing. Farmers Insurance's claim did not accrue until after the bankruptcy proceeding, foreclosing the insurer's opportunity to litigate the matter. Clearly, GP and AP did not and could not present the entire controversy at issue in the restitution hearing when they proceeded in the bankruptcy court. *See Lindas v. Cady*, 183 Wis. 2d 547, 558-59, 515 N.W.2d 458 (1994) (claim preclusion extends to all claims that could have been asserted in the previous litigation).

¶87    The claim preclusion argument is rejected on the merits.

*Issue Preclusion Does Not Apply*

¶88    Issue preclusion involves whether a particular issue of law or fact has been squarely decided such that the issue cannot be relitigated in a subsequent action. *See Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶17, 281 Wis. 2d 448, 699 N.W.2d 54. The question of law or fact sought to be precluded must have been actually litigated in a previous action and must have been necessary to the judgment. *Id.* Overall, it is "a [legal] doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993).

¶89    After deciding that an issue has been litigated and was necessary to the judgment, the circuit court must then consider fairness, determining whether it is fundamentally fair to prohibit more litigation over the issue given the circumstances of the particular case. *See Mrozek*, 281 Wis. 2d 448, ¶17. No one single fairness factor controls, and the weight to be accorded any factor is within the discretion of the circuit court. *See State v. Hirsch*, 2014 WI App 39, ¶14, 353 Wis. 2d 453, 847 N.W.2d 192. We review a circuit court's decision on issue preclusion for an erroneous exercise of discretion. *Id.* The court may consider any of the following factors:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Michelle T.*, 173 Wis. 2d at 689.

¶90    The Schwerdtfegers argue that issue preclusion reduces the criminal restitution amount of $141,850.47 to the $63,000 determined in the bankruptcy proceeding. They presume that "the commonality of the issues in the bankruptcy and restitution proceedings is obvious" but provide no explanation.

¶91    The purpose of the victims in filing the complaint within the bankruptcy proceeding was ultimately to prevent the Schwerdtfegers from discharging any debt they owed to the victims due to the property damage. To do

33

this, the victims cited to 11 U.S.C. § 523(a)(6), which makes a debt nondischargeable "for willful and malicious injury by the debtor to another entity or to the property of another entity." The victims had to "prove that: (1) the Debtor intended to and caused an injury; (2) the Debtor's actions were willful; and (3) the Debtor's actions were malicious." *James Cape & Son Co. v Bowles*, 318 B.R. 129, 146 (Bankr. E.D. Wis. 2004). Under this statute, "willful" means intent to cause injury, not merely the committing of the intentional act that lead to the injury. *See id.* These are stringent standards, requiring that the "debtor actually intended to harm, not merely that a debtor acted intentionally and thus caused harm. [The debtor] must have intended the consequences of his act, and therefore negligent or reckless injuries" are not sufficient. *Id.* (citation omitted). "Malicious" means "in conscious disregard of one's duties or without just cause or excuse." *Id.* (citation omitted).

¶92 By contrast, as explained in detail above (*see supra* ¶68), restitution is a sanction, and it is based on an entire course of conduct tied to the criminal conduct and the loss suffered by the victims. The recovery permitted is broader than that afforded in the bankruptcy proceeding.

¶93 Furthermore, not all of the questions of fact or law that the Schwerdtfegers seek to preclude were litigated in the bankruptcy proceeding. Whether Farmers Insurance is entitled to restitution was not litigated. Neither Farmers Insurance nor the State, the entity to which the criminal restitution remedy belongs, had an opportunity to participate much less seek review. Similarly, the categories of damages were not the same—such as Farmers Insurance's claim and the victims' attorneys' fees. While the Schwerdtfegers seek to apply the Farmers Insurance payment to AP and GP's losses, the victims

34

provided information at the restitution establishing their losses that were *not* covered by the insurer's payment, and their arguments wholly ignore that Farmers Insurance too is entitled to restitution under Wisconsin's restitution statute. In short, the mechanisms provided under Wisconsin's restitution statute address whether the same facts regarding losses are at issue to avoid any double recovery, not issue preclusion.

¶94    There is no doubt that the bankruptcy hearing offered a fair and quality review of some of the issues, but, as noted above, it was at the disadvantage of not including all of the interested parties (the State and Farmers Insurance), nor all of the evidence and categories of damages (the damage claim of Farmers Insurance and the attorneys fees questions). *See Mrozek*, 281 Wis. 2d 448, ¶17 (these significant differences between the proceedings weigh against the fairness of issue preclusion). "[A] restitution hearing is not the equivalent of a civil trial and does not require strict adherence to the rules of evidence and burden of proof." *State v. Johnson*, 2005 WI App 201, ¶14, 287 Wis. 2d 381, 704 N.W.2d 625; *see* WIS. STAT. § 973.20(14)(d) (in a restitution hearing, the court conducts the proceedings "so as to do substantial justice" according to substantive law, and it "may waive the rule of practice, procedure, pleading or evidence"). By contrast, the bankruptcy proceeding here was a civil trial, where parties must comply with the procedural bankruptcy rules and applicable Federal Rules of Civil Procedure. *See Dahlquist v. First Nat'l Bank*, 33 B.R. 101, 103 (Bankr. D. S.D. 1983).

¶95    In short, as noted above, defenses seeking to bar liability, rather than to reduce the amount, are simply not permitted. For this and all the other reasons already articulated, public policy would render the application of issue preclusion

in this case fundamentally unfair, as it would deprive the State and its victims of the liberal policy toward ordering restitution in criminal cases, particularly where, as here, it appears the driving concern is with a double recovery, an issue the restitution statute directly addresses.[14]

> *By the Court.*—Judgments and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[14] To the extent the circuit court did not fully explain its decision as to why issue preclusion does not limit the restitution award in this matter, we must search the record for reasons to affirm. *See, e.g.*, **State v. Hunt**, 2003 WI 81, ¶45 n.14, 263 Wis. 2d 1, 666 N.W.2d 771; **Conrad v. Conrad**, 92 Wis. 2d 407, 415, 284 N.W.2d 674 (1979). We have done so, as shown above. Moreover, we may affirm on different grounds than the circuit court. **State v. Holt**, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7) (1985-86).