COURT OF APPEALS
DECISION
DATED AND FILED

January 2, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1462**

Cir. Ct. No. 2020CV396

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

ESTATE OF JOLENE J. SHEA, BY PERSONAL REPRESENTATIVE, STACY SHEA, STACY SHEA, SHELLY NENNIG AND DAWN SHEA,

PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,

ESTATE OF GERALD & MARILYN WATZKA, BY CO-PERSONAL REPRESENTATIVES JERRY & JAMES WATZKA, ESTATE OF HAROLD & HELEN WATZKA, BY PERSONAL REPRESENTATIVE, SHARON KLYSEN, JERRY J. WATZKA, JAMES WATZKA, JOAN J. JINDRA, JEAN J. REDMON, JOHN J. WATZKA, SHARON KLYSON, GERALD L. HOLSCHUH, JEAN M. BRAWNER AND PAUL G. HOLSCHUH,

PLAINTIFFS,

V.

MERIDIAN SENIOR LIVING, LLC AND NATIONAL FIRE & MARINE INSURANCE COMPANY,

DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS,

STARSTONE SPECIALTY INSURANCE COMPANY,

DEFENDANT,

**ALEX AZAR, SECRETARY OF DHHS,**

**INVOLUNTARY-DEFENDANT.**

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Brown County:  MARC A. HAMMER, Judge.  *Affirmed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jolene J. Shea died in 2019 after a short stay at Birch Creek, an assisted living facility managed by Meridian Senior Living, LLC. Thereafter, Jolene's Estate and her three daughters, Stacy Shea, Shelly Nennig, and Dawn Shea (collectively, the Sheas), sued Meridian, alleging that despite representing itself as a twenty-four-hour care facility, Meridian negligently failed to adequately staff Birch Creek, which: (1) caused Jolene injury and ultimately her death; (2) breached Meridian's contract with Jolene; and (3) violated the Deceptive Trade Practices Act (DTPA) pursuant to WIS. STAT. § 100.18 (2021-22).[1]    Following a jury trial, the Sheas were awarded significant compensatory and punitive damages, including attorney fees.

¶2     Meridian and its insurer, National Fire & Marine Insurance Company (collectively, Meridian), appeal from the circuit court's order denying

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Meridian's numerous post-verdict motions and entering judgment against Meridian in favor of the Sheas. Meridian contends that the court erred in several respects both before and after trial and seeks a new trial on multiple grounds. The Sheas cross-appeal based on the court's refusal to provide a fully compensatory attorney fees award and its allegedly improper remittitur of the jury's punitive damages award. For the reasons that follow, we affirm the circuit court's order in all respects, but we remand for the court to determine the reasonable appellate fees incurred by the Sheas to defend their DTPA claim on appeal.

## BACKGROUND

¶3    Jolene moved into Birch Creek at the end of August 2019.[2] According to a Birch Creek staff member, approximately one month later, on the morning of September 29, 2019, Jolene was found unresponsive in her wheelchair. Jolene was taken to the hospital, where she died the next day. The Sheas claimed that Jolene was not provided necessary medication on the evening before her death and that Meridian had no record that anyone had checked on Jolene overnight.

¶4    Jolene's Estate sued Meridian, seeking compensatory damages, punitive damages, costs, and attorney fees.[3] The case was tried to a jury over five

---

[2] Birch Creek was a "community-based residential facility" (CBRF) located in De Pere, Wisconsin. A CBRF is a type of state-regulated assisted living facility where adult residents live together and receive up to "intermediate level nursing care." *See* WIS. STAT. § 50.01(1g); *see also* WIS. ADMIN. CODE ch. DHS 83.

[3] As the case proceeded, Jolene's three daughters were added as plaintiffs, and National Fire & Marine Insurance Company was added as a defendant. The Sheas also sued Starstone Specialty Insurance Company, another insurer of Meridian, but that party was dismissed without prejudice pursuant to the post-verdict motions and is not a party to this appeal.

We note that none of the issues in this appeal involve the remaining parties listed in the caption; therefore, we do not address them further.

3

days. At trial, the Sheas attempted to prove three claims: negligence, breach of contract, and a DTPA violation. However, the Sheas ultimately voluntarily dismissed their breach of contract claim after the close of evidence.

¶5 The jury returned a verdict in favor of the Sheas, finding Meridian causally negligent with respect to Jolene's care and that the Sheas had met their burden to prove their DTPA claim. The jury awarded $500,000 for Jolene's pain and suffering; actual medical and cremation expenses—$27,309.80 and $1,838.65, respectively—and $25,000 to each of Jolene's daughters for "loss of society and companionship." The jury further found that Meridian acted with intentional disregard of Jolene's rights and awarded $2,000,000 in punitive damages.[4] Finally, the jury awarded $4,000 for the DTPA claim.

¶6 After trial, the parties filed post-verdict motions. The circuit court issued an oral ruling, later memorialized in a written order, rejecting all of Meridian's requests to modify the verdict form and to order a new trial. The court did, however, remit the punitive damages to $1,058,296.90, given its conclusion that the total amount of compensatory damages was $529,148.45. *See* WIS. STAT. § 895.043(6). The Sheas, for their part, requested reasonable attorney fees in the amount of $547,678.89, but the court awarded only $12,000 of that amount under the fee-shifting provision of WIS. STAT. § 100.18. Meridian appeals, and the Sheas cross-appeal.

---

[4] Under WIS. STAT. § 895.043(3), "[t]he plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."

# DISCUSSION

¶7     On appeal, the parties each present separate issues for our review. Meridian's appeal focuses on what it calls "numerous errors the circuit [c]ourt committed" with regard to the trial in this case.  In contrast, in their cross-appeal, the Sheas challenge the amount of the attorney fees award as well as the court's decision to remit the punitive damages award, arguing that the court should have counted the DTPA award and the attorney fees as compensatory damages within the WIS. STAT. § 895.043(6) calculation.  We address these issues below.

## I. Meridian's Appeal

### a. Bifurcation

¶8     Meridian's first challenge is to the circuit court's denial of Meridian's motion to bifurcate the trial.  Meridian first moved in limine to bar any evidence of what it called noncausal other acts[5] on the grounds that such evidence was both irrelevant and unfairly prejudicial.  It appears that the court, by oral ruling, granted that motion in part and denied it in part, thereby allowing some of

---

[5] The motion in limine listed the following examples of noncausal other acts:  (1) "Two delays in responding to [Jolene's] call lights during her time at Birch Creek"; (2) "The occasional appearance or presentation of [Jolene's] food"; (3) "Delays in doing [Jolene's] laundry"; (4) "A delay in hooking up [Jolene's] telephone"; (5) "The absence of lift bars near [Jolene's] toilet"; (6) "An odor in the hallways of the facility"; and (7) "One delay in obtaining [Jolene's] antianxiety medication."

On appeal, Meridian recounts the noncausal other-acts evidence that was introduced at trial, which included the following: medication errors involving residents other than Jolene; significant lack of CBRF training and orientation; evidence of multiple holes within Birch Creek's medication administration record unrelated to Jolene; repeated references to bedbug infestation that did not affect Jolene; allegations from a 2018 email that residents were "suffering" and that Meridian's staffing "was asking for trouble"; delays in answering Jolene's call light; and that Meridian allegedly did not wash Jolene's clothes as well as the family would have liked.

the evidence Meridian sought to exclude to come before the jury, finding the evidence relevant to the Sheas' claims. Then, twelve days before trial, Meridian filed its motion to bifurcate the Sheas' negligence claim from the breach of contract claim.[6] The court subsequently denied that motion. Meridian challenges that decision on appeal.

¶9    According to Meridian, bifurcation was necessary to avoid prejudice and jury confusion. Its argument is two-fold. First, Meridian asserts that the circuit court erroneously exercised its discretion by failing to bifurcate the Sheas' claims upon Meridian's bifurcation motion.[7] The second argument is that the court erred by denying Meridian's post-verdict motion for a new trial on the basis that the failure to bifurcate was prejudicial.

¶10    The circuit court's authority to bifurcate claims for trial is derived from WIS. STAT. § 906.11 (the court "shall exercise reasonable control over" the trial) and WIS. STAT. § 805.05(2) (the court "may order a separate trial" of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy"). *Dahmen v. American Fam. Mut. Ins. Co.*, 2001 WI App 198, ¶11, 247 Wis. 2d 541, 635 N.W.2d 1. The decision whether to bifurcate claims is within the circuit court's discretion. *Id.* When

---

[6] In its motion, Meridian did not address whether the Sheas' DTPA claim would have been tried with the negligence claim or the breach of contract claim. In its post-verdict briefing before the circuit court, however, Meridian argued that the negligence and DTPA claims should have been tried together. On appeal, the Sheas wonder whether Meridian was seeking three separate trials, observing that Meridian's argument "means that under the [c]ourt's (unappealed) evidentiary rulings, the evidence Meridian says prejudiced its negligence defense would have come right back in for the DTPA claim."

[7] We note that Meridian uses the phrase "abuse of discretion" throughout its briefing. In 1992, our supreme court replaced that phrase with "erroneous exercise of discretion." *See, e.g.*, *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375.

deciding whether to grant a motion to bifurcate, "the [circuit] court must consider the potential prejudice to the parties, the complexity of the issues, the potential for jury confusion and the issues of convenience, economy and delay." *Id.* We will not reverse the court's discretionary decision "unless it is clearly shown that the [circuit] court failed to consider the relevant facts, apply the proper standard of law and reach a conclusion a reasonable judge could reach." *Id.*

¶11 Initially, we note that Meridian's position on appeal relies heavily upon the circuit court's discussions at the pretrial motion hearings. According to Meridian, the court found the noncausal other-acts evidence "relevant to the breach of contract claim, but irrelevant and prejudicial to the negligence claim." Although we do not necessarily agree with Meridian's presentation of the court's findings based on our independent review of the record on appeal, we need not delve into the details of the court's individual evidentiary rulings or statements. As the Sheas recognize, "the issue [in] this appeal is not whether the [c]ircuit [c]ourt made one or more evidentiary errors," "[t]he question is whether the [c]ircuit [c]ourt, looking at all the evidence to be presented in this case, was required to bifurcate the claims instead of addressing specific evidentiary objections as they arose at trial and via jury instructions."

¶12 We also agree with the Sheas' assertion that Meridian misstates the Sheas' basic argument by stating that "[t]he alleged causal act in this case was limited to Birch Creek's alleged failure to give Jolene Shea one prescribed dose of a medication called furosemide which was *allegedly* a contributing factor to her death." As the Sheas explain, and we further agree,

> each of the three claims involved proving that Meridian had consistently failed to adequately staff Birch Creek: the Sheas' DTPA claim asserted that Meridian's representation that "on-site dedicated staff" were "available 24 hours a day" was untrue, deceptive, or misleading at the time it was

7

made[;] the Sheas' contract claim asserted that Meridian materially breached its agreement to provide "24-hour awake staff to provide for residents' safety and personal care[]"[;] and the Sheas' negligence claim asserted that Meridian's insufficient staffing led to its failure to provide Jolene with important medication on multiple occasions and its failure to monitor her safety appropriately.

¶13 Accordingly, we concur with the Sheas that admission of the noncausal other-acts evidence was relevant to the negligence claim, the breach of contract claim, and the DTPA claim. By introducing the noncausal other-acts evidence establishing a habitual lack of trained staff at Birch Creek, the Sheas sought to demonstrate knowledge, intent, and a course of conduct on Meridian's part that was relevant to all three claims. *See* WIS. STAT. § 904.04(2)(a) (allowing evidence of "other … wrongs, or acts" "when offered for … proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Further, the noncausal other-acts evidence supported the Sheas' argument that because of this demonstrated knowledge and course of conduct, Meridian's negligence was intentional and grievous, such that punitive damages were warranted.

¶14 Therefore, we conclude that the circuit court did not erroneously exercise its discretion by denying Meridian's motion to bifurcate the Sheas' claims. To begin with, bifurcation is permitted, but it is not required. *See* WIS. STAT. § 805.05(2). Further, our review of the record demonstrates that the court properly, albeit implicitly, considered the ***Dahmen*** factors—i.e., potential prejudice to the parties, the complexity of the issues, the potential for jury confusion, and the issues of convenience, economy and delay—and reached a reasonable conclusion.

¶15    For example, the circuit court considered "an issue of timing" with regard to Meridian's motion, which was made only twelve days prior to trial. During the pretrial motion hearing, the court stated, "This matter has been pled for well over now I guess three years with multiple claims and causes of action. The case proceeded with the belief that we will try this case once on all relevant issues." Then, during the hearing on post-verdict motions, the court explained,

> I would also note that I think there was an issue of timing on the request to bifurcate. I think that request came in very late and that [it] was filed late in a very complicated and lengthy held case in terms of the filing of the jury verdict in this case.

Regardless of whether Meridian should or could have filed its motion sooner or whether the court actually stated it was denying the motion on this basis, the court properly considered the late filing of the motion to bifurcate as it related to considerations of fairness and judicial economy.

¶16    The circuit court also considered and rejected the same general arguments regarding relevance and prejudice that Meridian now raises on appeal. As the court stated at the hearing on the motion to bifurcate, "I accept the argument that the defense has made and I don't want them to think I have given it short notice or consideration." Although the court may have erroneously suggested "that some of the evidence that is going to be introduced at this trial doesn't address elements [the Sheas] will need to establish to prove negligence," the court also recognized "[t]hat [negligence] is not the only claim [they are] proceeding on. [They are] proceeding on multiple claims." Further, while the court concluded that the noncausal other-acts evidence was prejudicial, the court

9

explained that it was "not satisfied it is unduly or unfairly prejudicial," that there was "any prejudice from surprise," or that the evidence "is not material."[8]

¶17   In contrast, Meridian cites *Dahmen* in support of its position, arguing that *Dahmen* "teaches that prejudice, complexity of the issues, and potential for jury confusion all provide a strong justification to bifurcate claims." *See Dahmen*, 247 Wis. 2d 541, ¶10.   In *Dahmen*, we held that the circuit court erred by not granting the insurer's motion to bifurcate where the first claim was for underinsured motorist (UIM) benefits under an insurance policy and the second claim was for bad faith of the insurer based on its denial of the UIM benefit claim.   *Id.*, ¶¶1, 20.   We first recognized that a claim for UIM benefits and a claim for bad faith were "separate and distinct" and that "the evidence necessary to support" each claim was "very different."   *Id.*, ¶12.   We then reasoned that permitting discovery relevant to the bad faith claim would risk prejudice to the insurer on the UIM claim because it would disclose work product and attorney-client material regarding how the claim was handled.   *Id.*, ¶¶13, 16.

¶18   We are not persuaded that *Dahmen* requires us to conclude that the circuit court in this case erred.   Relevant here, the *Dahmen* court observed that although "the evidence on the two issues will likely overlap," "the evidence relevant to the bad faith claim is wholly unrelated to the underlying claim for UIM benefits."   *Id.*, ¶17.   However, as we have already addressed, the evidence in this

---

[8] We agree with the Sheas' observation that throughout its briefing, Meridian "fails to appreciate" the fact that most evidence is prejudicial, but the issue is whether the evidence is *unfairly* prejudicial.   *See State v. Alexander*, 214 Wis. 2d 628, 642, 571 N.W.2d 662 (1997) ("To be excludable, the relevant evidence must not be simply prejudicial.   Nearly all of the State's evidence is prejudicial to the defendant in some way.   To be excludable, the evidence must be unfairly prejudicial." (citation omitted)).

case pertaining to the breach of contract claim was not "wholly unrelated" to the Sheas' negligence claim. *See supra* ¶¶12-13. We also concluded in *Dahman* that judicial economy was served by bifurcation because if the UIM claim failed, then the bad faith claim would be moot. *Id.*, ¶19. A similar circumstance is not present here. Thus, *Dahmen*'s reasoning is not applicable to the facts in this case.[9]

¶19 In summary, the circuit court was within its discretion to conclude that one trial, rather than more, "promoted efficiency" and would not be "overly prejudicial" to Meridian. Given our conclusion that the three claims involved some overlapping evidence, the noncausal other-acts evidence was properly admitted as relevant to all of the Sheas' claims.

¶20 Meridian's second argument regarding bifurcation is that the circuit court erred by denying Meridian's motion for a new trial because the failure to grant the original motion to bifurcate did, in fact, result in unfair prejudice to Meridian at trial. Post-verdict, Meridian moved for a new trial in the interest of justice under WIS. STAT. § 805.15(1)[10] "because of significant and unfairly

---

[9] Meridian also cites *Huss v. Yale Materials Handling Corp.*, 196 Wis. 2d 515, 538 N.W.2d 630 (Ct. App. 1995). There, in an action asserting negligence and strict liability claims, the plaintiff wanted to introduce evidence of subsequent remedial measures taken by the defendant as evidence to support his strict liability claim. *Id.* at 526-27. The circuit court concluded that even though the evidence was relevant to the strict liability claim, the evidence "would lead to jury confusion and would unfairly prejudice" the defendant with respect to the negligence claim "by permitting the introduction of evidence as to a theory the jury could not properly consider when evaluating [the plaintiff's] claim of negligence against [the defendant]." *Id.* at 528.

Meridian asserts that *Huss* is analogous to this situation. We are not persuaded. *Huss* did not address bifurcation, and it is not otherwise factually or legally similar. As such, *Huss* does not demand a specific result here.

[10] WISCONSIN STAT. § 805.15(1) provides, in pertinent part:

(continued)

11

prejudicial evidentiary errors." The court denied the motion. "The [circuit] court's ruling on a motion for a new trial is highly discretionary and will not be reversed on appeal in the absence of a showing of [an erroneous exercise of discretion]." *Priske v. General Motors Corp.*, 89 Wis. 2d 642, 663, 279 N.W.2d 227 (1979).

¶21 In support of its claim that the circuit court erroneously exercised its discretion, Meridian contends that this court "needs to decide whether it is permissible for a circuit court to allow a plaintiff to intentionally smuggle evidence into a case using a claim it clearly has no intention of pursuing to completion." Meridian spends a significant amount of its appellate briefs arguing that the Sheas committed "gamesmanship" when they voluntarily withdrew their breach of contract claim during the trial. According to Meridian, the result of that withdrawal was that "the jury heard a substantial amount of prejudicial evidence that wasn't relevant to any factual issues it actually decided." (Formatting altered.)

¶22 Initially, we note that whether Meridian's allegations against the Sheas are founded or not, they are entirely irrelevant to the issue on appeal. As the Sheas argue, Meridian does not dispute that the Sheas were permitted to voluntarily withdraw the breach of contract claim during the trial. Further, Meridian specifically stated at trial, when the issue was addressed, that it did not oppose the Sheas' election to withdraw the breach of contract claim, nor did

---

> A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice.

Meridian request a curative measure.[11]   Thus, Meridian waived its objection. *See **State v. Fawcett***, 145 Wis. 2d 244, 256, 426 N.W.2d 91 (Ct. App. 1988).

¶23   Regardless, we also conclude that Meridian did not suffer unfair prejudice, for the reasons previously discussed.  As we addressed above, the noncausal other-acts evidence was relevant to more than just the breach of contract claim and was not improperly presented to the jury.  Therefore, Meridian suffered no unfair prejudice, and the circuit court did not erroneously exercise its discretion by denying its motion for a new trial in the interest of justice.

### b.  Statements of Deficiencies

¶24   Meridian next argues that the circuit court erroneously exercised its discretion by allowing the Sheas to refer during the trial to Statements of Deficiencies (SODs) that Birch Creek received from the Wisconsin Department of Health Services (DHS).[12]  Meridian asserts that a new trial is necessary on that basis.  According to Meridian, the SOD evidence that the jury heard included: (1) "complaints that the facility was understaffed"; (2) evidence that Birch Creek was having staffing scheduling issues; and (3) evidence that Birch Creek had a problem with "residents rights, medication administration, staffing, hiring practices, and staff training."  "Trial courts have broad discretion to admit or exclude evidence and to control the order and presentation of evidence at trial;

---

[11]  The circuit court acknowledged at the pretrial motion hearing that the jury would "hear it all" and the jury "may not know how to use" the evidence.  Accordingly, the court stated that it "would entertain a jury instruction" to address the concern with evidence on multiple causes of action.  Meridian never requested a curative jury instruction.

[12]  According to the record, DHS "issued SODs to Meridian setting forth a summary statement of deficiencies it identified at various points with respect to residents at Birch Creek, based on the DHS's finding of noncompliance with various regulations that govern CBRFs."

we will upset their decisions only where they have erroneously exercised that discretion." *See* *State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727.

¶25 Meridian contends that the SODs are "irrelevant and highly prejudicial" and that the circuit court permitted the evidence "without any substantial explanation." According to Meridian, the SODs are other-acts evidence and subject to the three-step analysis discussed in *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).[13] Meridian asserts that "the circuit court did not explain the rationale that led to its conclusion that the SODs were relevant to the negligence claim or otherwise admissible evidence," and the "court was operating on the assumption that the SODs were relevant to the breach of contract claim," which was dismissed. Therefore, Meridian contends that the court erroneously exercised its discretion by admitting the SODs into evidence.

¶26 In its oral ruling denying Meridian's post-verdict motion, the circuit court observed that "the admissibility of [the SODs] was fully briefed and argued on multiple occasions, both prior to trial and during trial." The court further stated that it "carefully limited the use of the [SODs] and made a record regarding why [it] thought those very limited [SODs] were admissible and relevant." We agree with the court's assessment.

---

[13] Separately, we observe that Meridian improperly cites as authority an unpublished opinion authored by a member of a three-judge panel and issued in 2003. We remind counsel that it is only proper to cite an unpublished opinion that is authored by a member of a three-judge panel for its persuasive value when the opinion was issued *on or after July 1, 2009*. *See* WIS. STAT. RULE 809.23(3)(b).

¶27    The record reflects that the circuit court addressed the SODs multiple times during these proceedings.  Specifically, during the court's oral ruling on Meridian's motion in limine, the court stated that it incorporated all legal authority and arguments made in the Sheas' briefing to support its rulings, including its decision as to the SODs.  In terms of relevancy and prejudice, the court stated that it was "satisfied that these records are relevant to the negligence claims regarding the standard of care and breach of the standard of care" and that "they are relevant to the contract claims to the extent the contract claims proceed." Further, the court did not simply allow all of the SODs into evidence.  Rather, the court noted prior to the trial that it would need to review each SOD before it would be published to the jury "so the opposing parties have an opportunity to object." Then, during the trial, the court made the following record:

> The [c]ourt went through each one of the proposed SODs, … analyzed each one of those that were requested, selected the ones that the [c]ourt felt were, number one, relevant to the claims and causes of action brought by the [Sheas]; number two, that, had some bearing in terms of [the] Shea[]s' specific claim; number three, were consistent with the evidence that's been placed on the record so far.
>
> All of the evidence isn't in, but based on the evidence so far, I'm satisfied that those [SODs] were consistent with the testimony that was elicited.  I think they are admissible on that basis.  I think, alternatively, they are admissible under an other[-]acts analysis.  I think these specific [SODs] are relevant to either plan and/or motive and/or intent and/or commonality and/or scheme.
>
> I think they are specifically relevant to the civil claims and causes of action that have been consistently pled in this case.  They are prejudicial; however, they are not unfairly prejudicial in relation to the evidence that has been presented to date and the claims and causes of action that have been presented.

¶28    Meridian's argument that the circuit court erroneously exercised its discretion in admitting the SODs is entirely general.  In fact, Meridian does not

15

identify a specific SOD that it claims the court erred by admitting such that we could analyze the court's decision, and we are, therefore, unable to review any specific evidentiary rulings on the SODs. Instead, Meridian merely asserts that the SODs were irrelevant, specifically as to the negligence claim. As we addressed above, however, the Sheas' negligence claim is broader than Meridian suggests. *See supra* ¶12.

¶29 Like the noncausal other-acts evidence, we agree with the Sheas that the SODs were relevant not only to Meridian's breach of contract claim but also to Meridian's breach of the standard of care and misrepresentation of its services. In particular, the SODs were relevant to Meridian's failure to provide adequate on-site staffing sufficient to prevent injury and death. Further, as even Meridian admits, the SODs were relevant to the issue of punitive damages, as they were offered to show that Meridian had intentionally disregarded Jolene's rights. Our review of the record does not demonstrate that the circuit court erroneously exercised its discretion.

### c. Sufficiency of the evidence

¶30 Meridian's final argument challenges the sufficiency of the evidence at trial. Meridian makes two assertions on this issue. First, Meridian argues that the Sheas failed to establish all of the elements of their DTPA claim. There are three elements to a WIS. STAT. § 100.18 claim: "(1) the defendant made a representation to the public with the intent to induce an obligation[;] (2) the representation was 'untrue, deceptive[,] or misleading[]'[;] and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell v. Migliaccio*, 2008 WI 44, ¶49, 309 Wis. 2d 132, 749 N.W.2d 544; *see also* WIS JI—CIVIL 2418 (2021). "Reliance is an aspect of the third element,

whether a representation caused the plaintiff's pecuniary loss." *Novell*, 309 Wis. 2d 132, ¶49.

¶31 On appeal, Meridian appears to challenge only the third element: that the "24/7 care representation" "materially induced" Jolene to move to Birch Creek. In particular, Meridian's post-verdict motion asked the circuit court to change the jury's answer on special verdict question No. 8, which addressed whether Meridian's representation was "a significant factor in contributing to Jolene Shea's decision to stay at Birch Creek." According to Meridian, the evidence presented at trial demonstrated that "the 24/7 care representation was not a significant factor" because "other factors were more important in her decision-making process" and "the only testimony showing that Jolene Shea actually relied upon the 24/7 representation in making her decision was speculative and [was stricken] from evidence by the circuit court at trial on that basis."

¶32 Our standard of review on this issue presents a significant hurdle for Meridian. "When considering a motion to change the jury's answers to verdict questions, we view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by *any* credible evidence." *Kubichek v. Kotecki*, 2011 WI App 32, ¶14, 332 Wis. 2d 522, 796 N.W.2d 858 (emphasis added); *see also* WIS. STAT. § 805.14(1). Further, we will search the record for credible evidence to sustain the verdict, and "if the evidence gives rise to more than one reasonable inference, we accept the inference the jury reached." *Kubichek*, 332 Wis. 2d 522, ¶14. Importantly, "[t]he standard of review is even more stringent where, as here, the circuit court upheld the jury's findings on motions after verdict." *Id.* "In such cases, we will not overturn the jury's verdict

unless 'there is such a complete failure of proof that the verdict must be based on speculation.'" *Id.* (citation omitted).

¶33    To establish the third element of a DTPA claim, the Sheas needed to show that the 24/7 care representation was "a significant factor" in Jolene's decision to purchase Birch Creek's services, but they did not need to show that the representation was "the sole or only motivation for [Jolene's] decision." *See* WIS JI—CIVIL 2418 (2021); *Novell*, 309 Wis. 2d 132, ¶49 n.3. We agree with the Sheas that evidence presented by Stacy at trial supported the jury's finding that the 24/7 care representation was a significant factor for Jolene. Stacy testified that "having 24-hour, around-the-clock care available" was "something that [Jolene] said was important to her," that Jolene "want[ed] that kind of care available to her," and that Jolene said "she was pleased to receive that kind of help." According to Stacy, Jolene's daughters knew they "needed to get [Jolene] where we could get … some care for 24 hours [so] we didn't have to worry about her." Stacy explained that when she found Birch Creek during her online search, she "thought, okay, this would be great. [I]t's got 24-hour care nursing. They take care of everything there. [Jolene]'s got, you know, her little apartment area, and they allowed her little cats, so she could have her cats there, which she would be thrilled, because that worried her." According to Stacy's testimony, when she shared this information with Jolene, "[s]he trusted us and was excited."

¶34    Here, our standard of review decides this issue, and we conclude that the circuit court properly rejected Meridian's arguments. The jury could have drawn reasonable, nonspeculative inferences from Stacy's testimony sufficient to support its causation finding. "[I]t is for the jurors, not for us, to determine 'what seems to them to be the most reasonable inference.'" *See State v. Abbott Labs.*, 2012 WI 62, ¶71, 341 Wis. 2d 510, 816 N.W.2d 145 (citation omitted). Further,

as it pertains to a DTPA claim, the fact that Jolene may have had other motivations for moving into Birch Creek does not invalidate the jury's finding as to the causation element. *See* WIS JI—CIVIL 2418 (2021).

¶35 To the extent Meridian attempts to cast doubt upon Stacy's testimony by noting that Stacy did not emphasize the importance of the 24/7 care representation during her pretrial deposition, we emphasize that it was the function of the jury, not this court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990). The jury was entitled to find Stacy to be a credible witness, despite any differences in her testimony. *See Morden v. Continental AG*, 2000 WI 51, ¶39, 235 Wis. 2d 325, 611 N.W.2d 659. The circuit court did not erroneously exercise its discretion by rejecting Meridian's post-verdict motion as to the sufficiency of the evidence on the DTPA claim.

¶36 Meridian's second argument regarding the sufficiency of the evidence is that "the jury's award of $4,000 [for the DTPA claim] is simply an arbitrary number suggested by the Shea[s'] counsel during his closing argument that was untethered to any record evidence." Meridian contends that this amount is "symbolic" rather than representative of the Sheas' actual damages for the DTPA claim because proof of that amount was never offered, and, accordingly, that amount should be vacated. In response, the Sheas assert that "[t]he jury's decision to award Jolene $4,000 … represents a partial refund of the $9,024.67 that Jolene paid for room and board at Birch Creek."

¶37 As noted above, *see supra* ¶30, a DTPA claim requires "pecuniary loss," which case law has defined to mean "any *monetary* loss, including the full

purchase price [or diminution in value], subject to the claimant's proof." *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, ¶¶22, 29, 359 Wis. 2d 597, 859 N.W.2d 451; WIS. STAT. § 100.18(11)(b)2. In general, damages must be established with reasonable certainty but not with mathematical precision. *See Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 189, 557 N.W.2d 67 (1996). "We apply a highly deferential standard of review to damage awards, affirming if there is any credible evidence which under any reasonable view supports the finding." *Selmer Co. v. Rinn*, 2010 WI App 106, ¶28, 328 Wis. 2d 263, 789 N.W.2d 621. "It is generally held that the uncertainty which prevents recovery is uncertainty as to the fact of the damage and *not to its amount*," and "[t]his rule [applies] where, from the nature of the case, the extent of injury and the amount of damage are not capable of exact and accurate proof." *Eden Stone Co. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 125, 479 N.W.2d 557 (Ct. App. 1991).

¶38 We conclude that the $4,000 award for the Sheas' DTPA claim is supported by the record. Meridian does not dispute that Jolene paid $9,024.67 for the time that she spent at Birch Creek, and that figure was admitted into evidence during the trial. Thus, the Sheas were entitled to seek the entire $9,024.67—"the full purchase price"—as damages for their successful DTPA claim, and that award would have been proper under the law. *See Mueller*, 359 Wis. 2d 597, ¶22. The Sheas' counsel informed the jury of this during his closing argument.

¶39 Meridian, however, takes issue with the Sheas' counsel also suggesting the $4,000 figure to the jury and calling it "more of a symbolic aspect." According to the Sheas on appeal, that figure "reflect[ed] that Jolene had received at least some of the services Birch Creek had promised during the time she spent there before her death, like food and shelter." In essence, if the jury could

properly award $9,024.67 as damages for the Sheas' DTPA claim, then its implicit decision to find that Jolene received at least some benefit from the amount paid before her death and to award a lower figure is supported by the evidence in the record. Given that mathematical precision is not required and that Meridian does not identify any evidence suggesting that $4,000 was incorrect, we conclude that there was sufficient credible evidence for the jury to find a pecuniary loss of $4,000 caused by Meridian's DTPA violation. Meridian has not cited any legal authority stating that a jury's decision to award a smaller amount of damages than that established at trial is cause to reverse a damage award. The circuit court did not err by denying Meridian's post-verdict motion on this basis.

## II. The Sheas' Cross-Appeal

### a. Common core of facts

¶40     The Sheas' cross-appeal first focuses on the circuit court's award of attorney fees. In their post-verdict motion for attorney fees and costs, the Sheas sought a total of $547,678.89. The court awarded just $12,000 of that amount.

¶41     As with all the issues in the appeal, "[w]e review a circuit court's decision regarding attorney fees for an erroneous exercise of discretion." *See Franke v. Franke*, 2004 WI 8, ¶84, 268 Wis. 2d 360, 674 N.W.2d 832. The Sheas' attorneys, as the ones submitting the fees, bear the burden of demonstrating the reasonableness of those fees. *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶34, 275 Wis. 2d 1, 683 N.W.2d 58. For the reasons that follow, we conclude that the circuit court did not erroneously exercise its discretion by refusing to award additional attorney fees.

¶42    The Sheas assert that the circuit court erred by reducing the Sheas' attorney fees award based on its conclusion that the DTPA claim and the negligence and breach of contract claims did not arise from a "common core of facts." WISCONSIN STAT. § 100.18(11)(b)2. contains a fee-shifting provision, whereby a successful DTPA claim authorizes an award of reasonable attorney fees. This is contrary to the so-called "American Rule" in litigation where "parties to litigation typically are responsible for their own attorney fees." *Estate of Kriefall v. Sizzler U.S. Franchise, Inc.*, 2012 WI 70, ¶72, 342 Wis. 2d 29, 816 N.W.2d 853. As the Sheas explain, that leaves the question of how attorney fees should be awarded in a case asserting both a fee-shifting claim and other claims that do not allow for the recovery of attorney fees.

¶43    According to the Sheas, this question was answered in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). There, the United States Supreme Court explained that, in the civil rights context, where "the plaintiff's claims for relief … involve a common core of facts or [are] based on related legal theories," the lawsuit "cannot be viewed as a series of discrete claims" because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Instead, the Court stated, trial courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" and "[w]here a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee," "encompass[ing] all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.*

¶44    *Hensley*'s rule was specifically adopted by this court in *Radford v. J.J.B. Enterprises, Ltd.*, 163 Wis. 2d 534, 472 N.W.2d 790 (Ct. App. 1991),

22

which was a DTPA case. In that case, "a jury found that the defendants intentionally misrepresented the soundness of a boat's hull during a sales transaction, thus violating" WIS. STAT. § 100.18. *Radford*, 163 Wis. 2d at 539. The circuit court awarded attorney fees pursuant to the DTPA and, over the objection of the defendants, did not reduce the award for time spent on unsuccessful DTPA contentions. *Id.* at 542-43, 549-50. On appeal, we affirmed the award, explaining that

> [w]e hold that the entire amount of the plaintiffs' attorney[] fees was properly assessed against the defendants. Under federal law, the losing party is not entitled to a reduction in attorney[] fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith. *See Hensley*[, 461 U.S. at 435-36]; *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1356-57 (11th Cir. 1983). This rule is particularly applicable where, as here, all of the plaintiffs' claims arise out of a common core of facts.

*Radford*, 163 Wis. 2d at 550.

¶45    Meridian asserts, however, that the *Hensley*/*Radford* common core of facts test applies only where all claims are fee-shifting claims. The Sheas disagree. Nevertheless, we need not specifically address the parties' arguments regarding whether the *Hensley*/*Radford* holding is applicable because the circuit court explicitly found that the claims in this case did not arise out of a common core of facts.

¶46    During the post-verdict motions hearing, the circuit court began its discussion of the attorney fees award by stating, "I have reviewed carefully the briefs in support of the motion for fees and the objections for fees and I will incorporate the arguments, the citations and the case law that has been submitted

23

relative to an award of fees." Then, the court explicitly found that it was "not satisfied [all the claims] are sufficiently arising out of the core basis of the facts."

¶47 We agree with the Sheas' assessment that based upon that finding, the circuit court "seemingly agreed to apply the 'common core of facts' test." However, the court did so in a conclusory fashion without explaining the basis for its finding that the Sheas' claims did not arise from a common core of facts. Nevertheless, we may search the record to support the court's findings. *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Further, as an appellate court, we do not decide whether we would have made the same decision as the circuit court; instead, we focus on whether the court's discretionary decision was made in accordance with accepted legal standards and with the facts of record. *See **Martindale v. Ripp***, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698.

¶48 In this case, while the claims were based on similar facts, the Sheas' arguments consider the term "common core" too broadly. The DTPA claim was a small, discrete claim within much larger and more complicated issues. In other words, the elements and detail required to prove the Sheas' DTPA claim were significantly less than what the Sheas were required to prove to prevail on their negligence and breach of contract claims. And proof of the negligence or breach of contract claim would not have been sufficient, in and of itself, to prove the DTPA violation. Thus, the circuit court's finding that the claims do not arise out of a common core of facts was not an erroneous exercise of discretion, and, accordingly, **Hensley** does not mandate full recovery in this case.

b. WIS. STAT. § 814.045(2)(a) presumption

¶49 Next, the Sheas argue that the circuit court erroneously exercised its discretion by awarding only $12,000 in attorney fees for three years of litigation.

The Sheas fault the court for relying on WIS. STAT. § 814.045(2)(a), which states that "[i]n any action in which compensatory damages are awarded, the court shall presume that reasonable attorney fees do not exceed 3 times the amount of the compensatory damages awarded," but the statute also explains that "this presumption may be overcome if the court determines, after considering the factors set forth in sub. (1), that a greater amount is reasonable." The Sheas first assert that § 814.045(2)(a) "establishes a presumption only" and that § 814.045(1) "provides 15 factors for consideration." They observe that the court failed to make a record on any of the § 814.045(1) factors, arguing that this failure was "an erroneous exercise of discretion."

¶50 The Sheas' second argument is that even if the WIS. STAT. § 814.045(2)(a) presumption "could be treated as irrebuttable, the proper base figure should have included all non-fee compensatory damages: $533,148.45, not just $4,000." According to the Sheas, the statute applies to "any action in which compensatory damages are awarded" and directs that fees be tied to the "compensatory damages awarded," but it does not limit the damages by claim. *See State ex rel. Henderson v. Raemisch*, 2010 WI App 114, ¶¶22-26, 329 Wis. 2d 109, 790 N.W.2d 242 (distinguishing between "action," meaning the entire legal proceeding, and "claim," meaning part of a legal proceeding). The Sheas contend that if the proper amount of compensatory damages is applied, then the amount of their requested attorney fees "would fall well within the statutory presumption."

¶51 We reject both of the Sheas' arguments and conclude that the circuit court properly applied WIS. STAT. § 814.045 under the circumstances of this case. As the Sheas recognize, § 814.045(2)(a) contains a *rebuttable* presumption, and it is clear that the Sheas attempted to rebut that presumption by addressing the

§ 814.045(1) factors in their post-verdict motion briefing. As noted, the court stated that it had reviewed the briefing and that it incorporated the arguments, citations, and case law into its decision regarding the award of fees. The court then concluded: "I think [the Sheas' attorneys are] entitled to fees relative to the [DTPA] claim which [they] won at trial and [they are] entitled to three times the compensatory award." In reaching this conclusion and by awarding the Sheas $12,000 in attorney fees, the court impliedly rejected the Sheas' arguments that the § 814.045(1) factors were sufficient in this case to rebut the § 814.045(2)(a) presumption. The Sheas had the burden to demonstrate that the requested fees were reasonable and related to the DTPA claim. They failed to do so.

¶52 On appeal, the Sheas do not develop a specific argument that the circuit court erred with regard to the WIS. STAT. § 814.045(1) factors, and to the extent they attempt to do so in their reply brief, their arguments come too late. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). The Sheas succeeded on their DTPA claim and were awarded $4,000 in damages. They were then awarded attorney fees totaling three times that amount. The court did not erroneously exercise its discretion by concluding that the Sheas had failed to rebut the § 814.045(2)(a) presumption.

¶53 As for the Sheas' second argument—namely, that the proper base figure should have included all compensatory damages, not just damages for the fee-shifting DTPA claim—we disagree. The basis of the Sheas' assertion is that "the 3x presumptive limit in WIS. STAT. § 814.045(2)(a) applies to 'action[s],' not 'claims,' and therefore is calculated based on all compensatory damages, not just the $4,000 DTPA award." We are not persuaded by the Sheas' argument that the statutory cap on attorney fees could or should be increased by including compensatory damages on claims for which attorney fees are *not available*.

Further, the Sheas do not present any legal authority in support of their interpretation of the statute, beyond arguing the difference between the words "claim" and "action." Thus, given our conclusion above that the court did not erroneously exercise its discretion by concluding that all the Sheas' claims did not arise from a common core of facts and limiting the recovery of attorney fees to those incurred in pursing the DTPA claim, we need not address the Sheas' argument further.

*c. Punitive damages award*

¶54    The Sheas' next argument is that the circuit court erred by "remitting the jury's punitive damages award because it should have counted the DTPA award, including the DTPA-authorized attorney fees [the Sheas] obtained, as 'compensatory damages' for purposes of the 2:1 punitive-to-compensatory-damages ratio in WIS. STAT. § 895.043(6)." (Formatting altered.) Under § 895.043(6), subject to exclusions not applicable here, "[p]unitive damages received by the plaintiff may not exceed twice the amount of any compensatory damages recovered by the plaintiff or $200,000, whichever is greater." The circuit court calculated the compensatory damages as $529,148.45, which included Jolene's medical expenses, her damages for pain and suffering, and her cremation expenses. As a result, the court remitted the jury's $2,000,000 punitive damage award to $1,058,296.90.

¶55    On appeal, the Sheas assert that the legislature's use of the term "any" to modify "compensatory damages" suggests that "any" essentially means "all" and that we must give the word "any" meaning. The Sheas also contend that the legislature could "have added a clause further limiting punitive damages to those compensatory damages recovered by the plaintiff pursuant to the claim to

which the punitive damages attach. But it did not do so; it said 'any' compensatory damages." According to the Sheas, we should not read into the statute a restriction that the legislature did not see fit to include.

¶56 We conclude that the circuit court did not err by calculating the compensatory damages based on only the damages awarded for the negligence claim. We agree with Meridian that the court's decision in this case was not an erroneous exercise of discretion because WIS. STAT. § 100.18 does not allow recovery of punitive damages for a DTPA violation. *See* § 100.18(11)(b)2.; *see also, e.g.*, *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶58, 395 Wis. 2d 421, 954 N.W.2d 339 ("A jury's award of punitive damages must be based upon a finding of tort liability.").

¶57 When we interpret a statute, we must consider the statute's "scope, context, and purpose." *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45, 48-49, 271 Wis. 2d 633, 681 N.W.2d 110. WISCONSIN STAT. § 100.18 explicitly states what damages are recoverable: "pecuniary loss," "costs," and "reasonable attorney fees." Sec. 100.18(11)(b)2. Unlike other statutes, punitive or multiplier damages are not part of that list. Given the context and purpose of the punitive damages statute, it would defy logic to suggest that a punitive damages award could be calculated based on any amount of compensatory damages for which punitive damages are not available. *See Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶194, 325 Wis. 2d 56, 784 N.W.2d 542 ("In enacting WIS. STAT. § 895.043, the legislature intended to make punitive damages less readily available."). Thus, the circuit court did not erroneously exercise its discretion by reading § 895.043(6) to mean "any compensatory damages recovered by the plaintiff"—of which there were various

forms in this case, including medical expenses, pain and suffering, and cremation expenses—for a claim which entitles the plaintiff to receive punitive damages.

¶58    In terms of whether the $12,000 in attorney fees for the DTPA claim should have been included in the compensatory damages calculation, the Sheas draw a parallel between a DTPA claim and a bad faith insurance claim. They assert that

> [j]ust as an insured is forced to hire counsel to obtain the value of the benefits promised by the insurer, the purchaser in a DTPA suit is forced to hire counsel to obtain the value of the benefits promised by the seller…. The fees thus become part of the damages the buyer has suffered.

*See* ***DeChant v. Monarch Life Ins. Co.***, 200 Wis. 2d 559, 571-77, 547 N.W.2d 592 (1996); ***Roehl Transp., Inc.***, 325 Wis. 2d 56, ¶163 n.65. Based on the public policy objectives of WIS. STAT. § 100.18, the Sheas argue that "[t]reating attorney fees under § 100.18 as compensatory damages for purposes of determining whether the ultimate award meets the [l]egislature's estimation of an appropriate punitive damages award is therefore fully consistent with [the] legislative purpose."

¶59    We disagree with the Sheas' assertion that attorney fees awarded for a DTPA violation should be counted as compensatory damages for several reasons. First, the Sheas have not provided any legal authority clearly stating that to be true. Second, the Sheas' attempt to compare DTPA claims with insurance bad faith claims is not persuasive, given that such a comparison is without the support of legal authority and that the claims are materially distinct—i.e., one is a statutory cause of action and one is a tort claim. Finally, and most importantly, the Sheas' conclusion is not supported by the statutory language. Neither WIS. STAT. § 100.18(11)(b)2. nor WIS. STAT. § 895.043(6) state that attorney fees awarded for

29

a DTPA violation should be considered compensatory damages. Although we recognize the Sheas' arguments regarding the public policy behind fee-shifting claims, *see Radford*, 163 Wis. 2d at 551, we do not agree that public policy demands the result the Sheas seek here.

## IV. Remand

¶60 Finally, the Sheas contend that we should remand this case for the circuit court to award reasonable appellate attorney fees for the entire appeal. *See Radford*, 163 Wis. 2d at 551. Meridian, for its part, does not develop an argument that remand is unnecessary, apart from a conclusory statement to that effect, but it asserts that if we remand, we should clarify that the Sheas are "not entitled to fees associated with defending their negligence claim on appeal or an unsuccessful cross-appeal." Given our conclusions above, we remand this case to the circuit court with directions to determine the Sheas' reasonable attorney fees and costs incurred with respect to defending only their DTPA claim on appeal.

*By the Court.*—Order affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.